## King *et al. vs.* Cabaniss.

81  661
118  272

1. Where the advertisement by an administrator to sell land in the county where it lies was published for the full legal period after general leave to sell had been granted, that the special order to sell in that county was passed pending the advertisement, and not until less than twenty days before the day of sale, did not make the sale invalid or even irregular. The authority to sell, and consequently to advertise, grew out of the general order, and the special order subsequently granted related to the final exercise of the authority and the place of such exercise.
2. Though the intestate at the time of his death was a tenant in common with a surviving cotenant, and owned but an undivided half-interest in the premises, yet a legal sale and conveyance made by his administrator of the south half of the tract, divested the title of the heirs to that half. The sale was not vitiated by selling a

larger interest than the intestate owned. Whether there was, prior to the sale, a proper or legal partition between the surviving cotenant and the heirs or the administrator, is not decided, that element not being material to a right result in the present case.

3. Fraud between the administrator and his immediate vendee will not affect subsequent purchasers, who are such *bona fide* and for value, and who derive title through the deed of the administrator without any notice of the alleged fraud.

October 3, 1888.

Administrators. Sales. Advertisement. Title. Partition. Fraud. Before Judge MARSHALL J. CLARKE. Fulton superior court. March term, 1888.

Reported in the decision.

T. M. NORWOOD, TOMPKINS & BRANDON and J. A. CRONK, for plaintiffs.

HARRISON & PEEPLES and A. H. COX, for defendant.

BLECKLEY, Chief Justice.

Camp and King were owners as tenants in common of the premises described in the declaration. King died, and administration upon his estate was granted in Cobb county. In 1866, the court of ordinary of that county granted the administrator general leave to sell all the real estate of his intestate, for the benefit of heirs and creditors. On the 12th of October, 1870, the same court, by special order, authorized the sale of all the lands lying in Fulton county to be made in the latter county. Under these two orders the administrator sold, at public outcry at the courthouse in Fulton county, the south half of the premises described in the declaration, as the property of his intestate, on the first Tuesday in November, 1870, and in the same month conveyed the same in pursuance of such sale by deed, the deed re-

citing both of said orders as authority for the sale, and also that the property had been first duly advertised according to law. The defendant in the present action claims a certain portion of the premises under this sale, making no claim, as we understand from the evidence and the argument, to any of the tract not so sold, nor even to any of that which was sold except a slip described in his bond for titles from Reynolds, three hundred feet long by seventy-eight wide at one end and seventy-five feet at the other. To the rest of the tract sued for he, through his counsel, disclaims title here, though no formal disclaimer has been entered on the record.

The controlling question for our consideration is, whether the heirs of King were divested of their title as to the south half, the half sold and conveyed by the administrator, the plaintiff's lessors claiming solely as heirs of King.

1. The sale is attacked because made within less than forty days after the order authorizing it to take place in Fulton county was granted, the deed showing on its face that such was the fact, and the law at that time requiring sales of land by administrators to be advertised forty days previously to the day of sale. The deed recites that there had been due advertisement according to law, and there is no evidence to the contrary unless the law required it to be advertised for the whole term of forty days, not only after leave to sell was granted, but after the court of ordinary granted permission for the sale to take place in Fulton county, the county in which the property was and is situate. The statute applicable to the question reads as follows : "Every such sale shall be advertised in any newspaper having a general circulation in the county where the property is located for forty days after the leave granted

and before the sale. It shall be had at public auction on the first Tuesday of the month, between the usual hours of sale, and at the place of public sales in the county having jurisdiction of the administration, unless by special order in the discretion of the ordinary, a portion of the land is sold in another county where the land lies." Code of 1868 (Irwin's), §2519. The construction which we put upon this language is, that the authority to sell exists as soon as leave to sell at all is granted, and that the place of sale appertains to executing the authority, and such place may be designated at any time before the sale is actually made. A general order fixes no exclusive place of sale, but leaves the question open for the exercise of the ordinary's discretion, and he can exercise it at any time, certainly at any term of his court, before the sale takes place. It is leave to sell which lays the foundation for the advertisement, and the advertisement must specify the place of sale, and be published for the prescribed time; but to render the sale regular, if advertised to take place elsewhere than in the county having jurisdiction of the administration, a special order of the ordinary giving his consent and approbation for the sale to be had there, must be obtained, not as authority for advertising that the sale will take place in the county where the land lies, but as authority for selling it there. The requirement to obtain a special order does not qualify advertising as does the requirement to obtain leave to sell, but it qualifies selling, and that alone. Before there can be a sale with due regularity, the special order must be had; whereas, leave to sell must not only precede the sale but the advertisement also. The special order fixing the place may be a part of the order granting leave to sell, or it may be, as in the present case, a subsequent and separate order. The statute does not exact

that both orders shall be embraced in one and the same judgment, or that they shall be in separate judgments. It is enough that the leave to sell precedes the advertisement, and that the special order as to the place precedes the sale. Here the leave to sell was granted in 1866, and the sale was in November, 1870. The recital· in the deed is that the advertisement was due and legal. *Prima facie* the recital is true; and there is no evidence which contradicts it. To be due and legal, the advertisement must have commenced after the leave was granted and run for forty days prior to the sale, and must have specified Fulton county as the place of sale. We are to assume that whilst it was running, the special order was granted, giving the approbation of the ordinary to the place of sale which the administrator had selected and specified in his advertisement.

The construction which finds the authority to sell in the order granting leave, and which treats the place of sale as appertaining, not to the existence, but to the exercise of the authority, is supported fully by *Patterson vs. Lemon*, 50 *Ga.* 231. In that case the authority was exercised upon the general leave to sell alone; there was no special order, and yet the sale was upheld in favor of a subsequent *bona fide* purchaser, with a suggestion of doubt by Judge McCay, as to whether it was not good in favor of the immediate purchaser also. As upholding the distinction which that case draws, and which we draw, between leave to sell and a special order touching the place of sale, we may observe that the application for leave cannot be granted until after notice of the same has been published once a week for four weeks (code, §2559); whereas, for granting the special order no preliminary notice of any kind is prescribed or required. Moreover, the two things are so different that they are treated of apart, and in separate sections of the code.

2. The sale was none the less efficacious in divesting the title of the heirs because it was not restricted to an undivided half of the property sold, the real interest of the intestate if no valid partition between his estate and Camp had taken place. A sale of the whole south half of the premises passed whatever interest the estate or the heirs had in that specific preperty; and hence, the question of partition and all the points concerning it are immaterial in the present case. If the partition was valid and the evidence of it admissible, the title both of Camp and the heirs of King passed by the administrator's deed; if, on the other hand, the partition is to be disregarded, Camp's interest might not be affected by the deed, but the interest of the heirs would be in any event. We therefore leave the element of partition out of view, and make no ruling on it, except to intimate that perhaps, under our peculiar system in Georgia, an administrator, having leave to sell all the real estate of his intestate, may represent the heirs at law in proceedings for partition touching lands owned by the decedent in common with a stranger. He certainly does represent creditors in all dealings with the estate, and that partition is, or may be, a step appropriate to administration, as a preliminary of sale, where he has leave to sell for the common benefit of heirs and creditors, seems probable. His representative powers in Georgia are very broad, at least in chancery. *Barclay vs. Kimsey,* 72 *Ga.* 725. And an order for sale will entitle him at law to recover the realty from the heirs. Code, §2486. As tending to negative the right and power of an administrator to represent the heirs in proceedings for the partition, we are referred to Freem. Coten. & Par. §§454, 471; Hawkes Parties, §28, and note 21; Pomeroy Rem.; 2 Mass. 478; 18 Fla. 156; 51 Ala. 578; 67 Am. Decis. 709, note; 136 Mass. 126; 2

South. Rep. 620; 46 Miss. 661; 14 N. J. Eq. 240, 250; 30 La. An. 182; 12 Ind. 36; 2 Eastern Rep. 630; 31 Am. Dec. 168, 182–6; *Akin vs. Akin,* 78 *Ga.* 24.

3. The purchaser at the administrator's sale was Mrs. King, and she conveyed to Peters, Peters to Reynolds, and under Reynolds the defendant, Cabaniss, holds by bond for titles. At the trial, the plaintiffs sought to attack the *bona fides* of the sale and conveyance by the administrator to Mrs. King, and for that purpose offered certain letters together with parol evidence, but not offering to bring home notice of the suggested fraud either to Reynolds or Cabaniss, both of whom purchased *bona fide* for value. Allowing that the letters, etc. would show fraud as between the administrator and his vendee, and this, we think, is very questionable, they would not affect the conscience either of Reynolds or Cabaniss. It was suggested in argument that only those having the legal title are protected by the want of notice, but we have seen that Reynolds acquired that title, and Cabaniss, being in possession under him, is entitled to take the benefit of it, though he holds by bond only. Indeed, it seems to have been admitted that he was to be treated in all respects, in this litigation, as if Reynolds had already conveyed to him by deed.

There was no error in refusing a new trial in behalf of the plaintiffs in the action, but in affirming the judgment we direct that its effect be restricted to so much of the premises embraced in the declaration as the bond for titles from Reynolds to Cabaniss, as set out in the brief of evidence, applies to; the same being, as appears, the real subject-matter of the suit as against Cabaniss, and his possession, neither as proved nor admitted, not extending to any more of the premises described in the pleadings.

Judgment affirmed.