GILLMAN v. THE FLORIDA CENT. & PEN. R. R. CO.

1. RAILROADS—PASSENGERS—DAMAGES.—Where a conductor informs a prospective passenger that he will hold the train for him until he can buy a ticket, and does not do it, the company is liable in punitive damages.

2. IBID.—DAMAGES—EVIDENCE.—Acts of plaintiff after arrival at destination are competent to aggravate punitive damages against a railroad for wilful failure to carry him on a particular train.

3. DAMAGES—EVIDENCE.—Party may testify in action for punitive damages that he cannot estimate his feelings in damages.

4. EVIDENCE.—Uncommunicated thoughts or suppositions are not competent testimony.

5. APPEAL—NEW TRIAL—JURISDICTION.—This Court has no jurisdiction to review a refusal of a Circuit Judge to grant a new trial for want of evidence, or for excessive damages.

Before TOWNSEND, J., Lexington, February, 1898.   Affirmed.

Action by R. E. Gillman *v.* The Florida Central and Penninsular Railroad Company upon the following complaint (omitting the formal paragraph as to corporation, etc.):

2. That at Denmark, a station on the line of said railroad, now in Bamberg County, but then in Barnwell County, in the State aforesaid, at 3 o'clock on the morning of the 23d day of October, 1897, the plaintiff, on reaching the said station at Denmark, applied to the station agent of the defend-

ant for a ticket to Richmond, Va.; whereupon the said station agent informed the plaintiff that the train going to Columbia, S. C., was then approaching the station from Savannah, Ga.; that he would not have time to deliver him the ticket, but would check his baggage to Columbia; that he could pay the conductor of said train his fare to Columbia, S. C., at which place he could procure a ticket to Richmond, Va.

3. That plaintiff then and there informed said station agent of the defendant that his sister was lying dead in the city of Richmond, Va., and that it was of the utmost importance for him to go on the train of the defendant, which was then approaching said station at Denmark.

4. That immediately upon the arrival of said train at said station, the plaintiff boarded it and deposited his sample case and grip sack in the first class car of said train, and the said station agent, who had checked plaintiff's baggage, came to the platform of one of the cars of said train, on which the conductor of said train of cars was standing, and informed said conductor, who was the agent and servant of the defendant, and acting within the scope of his authority as such agent and servant, that he had been unable to give the plaintiff a ticket, but had checked his baggage to Columbia, and that plaintiff would pay said conductor his fare to Columbia; and being informed that plaintiff was on his way to Richmond, Va., and how important it was for plaintiff to go on said train of cars in order to reach Richmond at the earliest possible moment, the said conductor then and there directed the said station agent to sell plaintiff a ticket to Richmond, saying that said train was on time, that he was in charge of it, and would hold it there until plaintiff could go with said station agent to the office, get the ticket, and get on said train.

5. That under the direction and instruction of said conductor, who was in charge of said train of cars as agent and servant as aforesaid, this plaintiff got off of said cars and went to the office of said station agent and procured a ticket to Richmond, Va., paying said station agent the sum of

$13.45 for the same, and immediately returned to the place where the train was standing when he left it.

6. That before the plaintiff could procure said ticket and return to the place where he left said train of cars, the said conductor of said train of cars, being the agent and servant of the defendant, and acting within the scope of his authority as such agent and servant, wrongfully, *wantonly*, and *wilfully* caused said train of cars to leave said station for Columbia, S. C., at a rapid rate, carrying away plaintiff's baggage, sample case, and grip sack, and left plaintiff at said station without any provocation whatsoever.

7. That by reason of the wanton and wilful conduct of the agent and servant of the defendant, as is hereinbefore set forth, and in getting this plaintiff off said train and leaving him as aforesaid, this plaintiff was delayed, greatly inconvenienced, and humiliated, was insulted and his feelings injured, was subjected to further expense in trying to reach Richmond, and was otherwise injured, to his damage $1,900.

From judgment for plaintiff, defendant appeals.

*Messrs. C. J. C. Hutson* and *Wm. H. Lyles*, for appellant. The latter cites: *Demurrer should have been sustained:* 40 S. C., 524; 31 S. C., 52; Martin *v.* R. R., 32 S. C.

*Messrs. P. H. Nelson* and *G. T. Graham*, contra, cite: *Exemplary damages are not necessarily based on actual damages:* 41 Ill., 62; 51 Ill., 467; 14 S. E. R., 315, 948, 946; 15 S. E. R., 158, 878, 621, 879; 35 S. C., 475, 493; 29 S. C., 381. *Not necessary to show actual damages:* 15 S. E. R., 879. *Amount of punitive damages is alone for jury:* 63 Ill., 167; 35 F. R., 116; 63 Barb., 260; 20 Ga., 428; 24 Cal., 513; 5 Ind., 224; 21 S. C., 559; 29 S. C., 324; 20 S. E. R., 752.

Sept. 28, 1898. The opinion of the Court was delivered by MR. CHIEF JUSTICE McIVER.   Inasmuch as the first question raised by this appeal is whether there was error in overruling the demurrer interposed, upon the ground that the

facts stated in the complaint are not sufficient to constitute a cause of action, it will be necessary for the Reporter to set forth in his report a copy of so much of the complaint as states facts of the case, to wit: paragraphs two, three, four, five, six, and seven. If the facts there alleged be true— and they must be taken to be so—in considering the sufficiency of the demurrer, it seems to us that the case of *Samuels* v. *R. & D. Railroad Co.*, 35 S. C., 493, conclusively shows that the facts there alleged are quite sufficient to sustain the plaintiff's cause of action for exemplary damages; and it seems that both parties, as well as the trial Judge, treated the case as an action for the recovery of exemplary damages only. There can be no doubt that when a railroad company receives a charter from this State, or even when it has been chartered by another State and allowed to exercise its corporate franchises within the limits of this State, it assumes certain duties to the public, accompanied with correlative rights on the part of the public, which duties it is legally bound to perform on the one hand and to recognize those rights on the other. When such a corporation assumes the position of a carrier of passengers within this State, as the defendant corporation is conceded to have done, it assumed, amongst other duties, the obligation to receive and carry safely and promptly all persons offering themselves for transportation to and from the various stations along the line of its road; and when the plaintiff offered himself as a passenger at Denmark, one of defendant's stations, to be carried to Columbia, the terminus of defendant's road, and thence to Richmond, Va., by connecting lines, he had a right to be received as a passenger, and afforded every proper and necessary facility for reaching his destination comfortably, safely, and promptly, provided he complied with the reasonable regulations of the company for that purpose; and he also had a right to ask for and obtain from the officers and agents of the defendant company all necessary information to enable him to accomplish his purpose. If, therefore, the plaintiff was

deprived of or hindered in obtaining the enjoyment of his legal right by the wilful defauit of the officers or agents of the company intrusted with the performance of the duties resting upon the company, or by their wanton or reckless disregard of the rights of the plaintiff, he certainly would have a cause of action against the company, not only to recover damages for any pecuniary loss he might thereby sustain, but also for exemplary damages, as a punishment for such wilful and wanton disregard of plaintiff's legal rights. Inasmuch as plaintiff is not suing for any consequential or special damages, the absence of any allegation in the complaint of any such da͟mages cannot affect the question, the claim being for exemplary damages, which arose immediately out of the alleged misconduct of defendant's officers and agents.

The demurrer having been overruled—properly, as we have seen—testimony was introduced by both parties; no motion for a nonsuit having been made, and the case was submitted to the jury under the charge of the Circuit Judge, and a verdict was rendered in favor of plaintiff for the sum of $1,500. Therefore, the defendant moved, on the minutes, for a new trial. 1st. Because there was no evidence which would justify the jury in rendering a verdict for punitive damages. 2d. Because the damages awarded by the jury were excessive. This motion having been refused and judgment entered upon the verdict, the defendant appeals upon the several grounds set out in the record. The first two grounds, imputing error to the Circuit Judge in overruling the demurrer, having already been disposed of, need not be further considered.

The third ground complains of error in allowing the plaintiff to testify as to what he did after he got back to Richmond. This, it seems to us, was harmless error, if error at all. At most its only effect would be to aggravate—*not* the damages which plaintiff sustained but the damages which defendant should pay, by reason of the misconduct of its servants, as a punishment for their

wilful or wanton default; and in that view it would be competent.

The fourth ground imputes error to the Circuit Judge in allowing plaintiff to say, in answer to the question, "How can you estimate your feelings in damages?" "No reasonable amount could have bought my privilege of being at home in such a case." We do not see any error in this. He did not undertake to say how much he estimated his damages at. Indeed, his answer showed that he could not make any estimate of the amount.

The fifth and sixth grounds impute error in not allowing the witness, Brock, who seems to have been the conductor of the train which plaintiff desired to take, to say what he thought or supposed. There was, clearly, no error in this. The witness was allowed to say what he said and did; and certainly what was in his own mind, and not communicated to any one, was not competent testimony.

The seventh, eighth, ninth, and tenth grounds complain of error on the part of the Circuit Judge in what he said to the jury in regard to exemplary damages. These grounds are, practically, based upon the same theory as that upon which the demurrer was rested; and what he said to the jury was, in fact, nothing more than the legitimate consequence of his ruling as to the demurrer; and as we have concurred in that ruling, these grounds must be overruled.

The eleventh and twelfth grounds complain of error in refusing the motion for a new trial. Ever since the case of *Steele* v. *C., C. & A. R. R. Co.,* 11 S. C., 589, and the case of *State* v. *Cardoza,* 11 S. C., 195, we think it should be regarded as settled in this State, that this Court has no jurisdiction to review the action of a Circuit Judge in refusing a motion for a new trial, either upon the ground of want of evidence to sustain the verdict or for excessive damages.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.