### ISOM *et al. v.* NUTTING *et al.*

The court did not err in sustaining the demurrer and in dismissing the petition.

No. 2756. JUNE 19, 1922.

Equitable petition. Before Judge Thomas. Colquitt superior court. July 20, 1921.

Emma Isom, Pearl Kelly Culpepper, and Alma Kelly, an infant under twenty-one years of age, who sues by her next friend and guardian, J. L. Isom, brought their equitable petition against Julia A. Cook, James Humphreys, John A. Carlton, J. G. Finch, and L. V. Stallings, residents of Colquitt County, Georgia, Cleo P. Allen, W. P. Phelps, and J. R. Nutting, of Fulton County, the Avalon Company, a corporation with its main office and place of business in Fulton County, O. A. Bell, a resident of Bradentown, Florida, H. J. Finch of the State of Alabama, and P. B. Allen of Wadesboro, North Carolina. Plaintiffs allege that they are the sole heirs at law of T. R. Kelly, who died in 1910, seized of the north half of lot of land No. 295 in the 8th district of Colquitt County, Georgia; that the defendant Julia A. Cook was formerly the wife of T. R. Kelly, and she qualified as administratrix on his estate; that pursuant to an order of the court of ordinary of Colquitt County she sold the land in controversy at administratrix's

sale on the first Tuesday in January, 1906, to James Humphreys, who bid off the land at and for the sum of $75 as the consideration expressed in the face of the deed from her as administratrix to him; that no consideration was paid by Humphreys to Julia A. Cook, but as a matter of fact he was bidding in the land for her, and on the same day she executed and delivered to Humphreys, her attorney, her administratrix's deed conveying to him the land in controversy; that on January 2, 1906, Humphreys reconveyed the described lands to Julia A. Cook at an expressed consideration of $5, although plaintiffs charge that no consideration whatsoever passed between them. Both the deeds were duly recorded on July 30, 1906. Since January 2, 1906, the following conveyances of the property have been made; February 8, 1908, Julia A. Cook by warranty deed conveyed 145 acres of land to O. A. Bell for the consideration of $550, and this deed was recorded February 11, 1908. On February 1, 1911, O. A. Bell by warranty deed conveyed said 145 acres of land to L. V. Stallings for a consideration of $550, which deed was recorded February 9, 1911. On February 1, 1911, L. V. Stallings by warranty deed conveyed the 145 acres, less ten acres in the northern part of the tract, to John A. Carlton and Cleo P. Allen for a consideration of $600, which deed was recorded. On January 13, 1906, Julia A. Cook by warranty deed conveyed to H. J. Finch 100 acres of said land for a consideration of $500, which deed was recorded January 15, 1906. On September 3, 1908, H. J. Finch by warranty deed conveyed to J. G. Finch the 100 acres of land for the consideration of $500, which deed was recorded September 11, 1908. On September 28, 1908 J. G. Finch by warranty deed conveyed to P. B. Allen 100 acres of the land for a consideration of $500, which deed was recorded December 1, 1908. On April 27, 1910, P. B. Allen by warranty deed conveyed to John A. Carlton 100 acres of land for a consideration of $500, which deed was duly recorded May 7, 1910. On April 21, 1916, John A. Carlton by warranty deed conveyed to the Avalon Company all the north half of lot 295, among other lands, except ten acres in the northern part of the lot, for a consideration of $35,000, which deed was recorded May 15, 1916. On January 18, 1917, the Avalon Company by warranty deed conveyed to W. B. Phelps, among other lands, the north half of lot No. 295 in the 8th district of Colquitt County, except ten acres in the northern

part, for a consideration of $24,000, which deed was recorded February 27, 1917. On April 7, 1919, W. B. Phelps by warranty deed conveyed to J. R. Nutting, among other lands, all the north half of said lot, except ten acres in the northern part, for a consideration of $24,000, which deed was recorded. It is alleged that the sale by the administratrix to her attorney and the sale by the attorney back to her was in fact the administratrix purchasing at her own sale; and that the price expressed in the deed, which was never paid, was grossly inadequate, for that the land was worth at least $2500 at the time of the administratrix's sale; and plaintiffs do now disclaim the sale, and say that petitioner Pearl Kelly Culpepper is twenty years of age, and petitioner Alma Kelly is eighteen years of age. It is alleged, that the defendants are not bona fide purchasers without notice; for that the deed from the administratrix to her attorney for an expressed consideration of $75, and the reconveyance from the attorney to the administratrix as an individual on the same day, which conveyance was a quitclaim deed for an expressed consideration of $5, constitute notice to all of said defendants that the sale was made by the administratrix to herself; for that both of said deeds constitute muniments of title of each and all of the defendants, and they are therefore chargeable with notice that said sale was voidable at the option of these plaintiffs; that J. R. Nutting is now in possession of and claiming title to all of said lands, except ten acres in the northern part of the lot, which part is claimed by L. V. Stallings; and both of the defendants claim title under the deed from Julia A. Cook to James Humphreys and from James Humphreys back to Julia A. Cook. The prayer was that the sale made by the administratrix to her attorney on January 2, 1906, be set aside and declared null and void; that the administratrix's deed from Julia A. Cook to James Humphreys, the quitclaim deed from James Humphreys to Julia A. Cook, executed on January 2, 1906, and each and every deed set out above be required to be delivered up and be canceled by proper order of the court; that the title to the lands described in the petition be decreed by the court to be in plaintiffs; and that a writ of possession in their favor issue therefor.

John A. Carlton, J. G. Finch, the Avalon Company, J. R. Nutting, L. V. Stallings, and W. B. Phelps filed their general demurrer to the petition. The demurrer of Nutting, Stallings and

Phelps, among other grounds, averred that the petition together with the entries of service by the sheriff, shows that the following necessary parties defendant have not been served with copies of the suit, viz., Cleo P. Allen, O. A. Bell, H. J. Finch, P. B. Allen and James Humphreys; and they demur on the ground that the plaintiffs should have said named parties served as necessary defendants. The plaintiffs amended their petition by alleging that Emma Isom at the time of bringing the petition in this case was twenty-two years of age, and by striking as parties defendant to the suit the defendants named next above as having no service made upon them, and as not being necessary parties to the suit. The court sustained the demurrers on each and every ground and dismissed the case. To this judgment the plaintiffs excepted.

*Dowling, Askew & Whelchel,* for plaintiffs.

*W. F. Way, James Humphreys, L. L. Moore,* and *H. J. Haas,* for defendants.

HILL, J. (After stating the foregoing facts.)

1. The sole question involved in the case is, are the purchasers from and under Julia A. Cook bona fide purchasers without notice that Julia Cook or her attorney purchased the lands described in the petition at the sale which she was conducting as administratrix? The case is argued by the attorneys for plaintiff in error upon this theory alone.

It is well-settled law in this State that an administrator can not purchase at his own sale, either directly or indirectly, and that such sale is voidable at the instance of heirs at law of the intestate, who do not ratify the sale, and who move to set it aside within a reasonable time. See *DeVaughn* v. *Griffith,* 149 *Ga.* 697 (101 S. E. 794). It is conceded on the argument here by counsel for plaintiffs in error that if it be determined that subsequent purchasers are such bona fide and for value without notice, then the trial judge properly dismissed the petition on demurrer. But it is contended that none of the subsequent purchasers from Mrs. Cook were bona fide purchasers without notice of the fact that the administratrix purchased the lands at her own sale; and it is argued that a purchaser is chargeable with notice of recitals in a deed constituting a muniment of title, as well as every fact appearing upon record with reference to his title; citing Devlin on Deeds, 1889, § 1000. In the case of *Rosser* v. *Cheney,* 61 *Ga.* 469,

it was said that "The first purchaser and those claiming under him stand charged in law with notice of the recitals in the deed from Rosser to Cheney and wife. That deed forms a link in the chain of title, and this court has held that its recitals affect them, whether they examine it or not. They might and ought to have examined it, and are in the same situation as if they had examined it. Notice is not synonymous with knowledge, but has a much broader signification. If a person either knows a thing or is legally bound to inform himself of it, he has notice. The law is not indulgent to ignorance where diligence has been omitted." The above case was cited as authority by plaintiffs in error; but we do not think it is controlling here, for the deed which was attacked in that case was *void* for the reason that the land sold in that case was homestead property and was made without the proper order of court. But in cases like the present a sale by an administrator to himself is not void, but voidable at the instance of any person interested in the property. *Moore* v. *Carey,* 116 *Ga.* 28, 31 (42 S. E. 258).

In the case of *Cox* v. *Barber,* 68 *Ga.* 836, two executors sold realty of their testator; a third party bought; on the same day he conveyed the land to one of the executors individually; some two years thereafter the latter sold to a purchaser for value; the deeds on their face all purported to be for a fair and valuable consideration. It was held in that case: "That in the absence of all actual notice, these facts appearing from the recorded deeds were not sufficient to put the purchaser on notice that the sale was by an executor to himself, so as to prevent his being entitled to protection as a bona fide purchaser." And see *Moore* v. *Carey,* supra; *Williams* v. *Smith,* 128 *Ga.* 306 (57 S. E. 801). No actual notice is alleged whereby the purchasers from Mrs. Cook and her vendees had knowledge of the fact that she was a purchaser at her own sale; and the consideration expressed in the deeds subsequently to the deed to Mrs. Cook expressed a fair consideration; and this being so, we can not hold, as contended by the plaintiffs in error, that there is constructive notice sufficient on the face of the conveyances to the subsequent purchasers that the administratrix bought at her own sale, or that the transactions were not made in good faith. There is nothing in the record to show that James Humphreys, who bought at the administratrix's sale, was

the attorney or agent for her in the purchase of the property. All of the conveyances from 1906 down to the last conveyance in 1919 show valuable considerations on the face of the deeds, and that the purchase-money was paid in each case. Our Civil Code, § 4120, declares: "A title obtained by fraud, though voidable in the vendee, will be protected in a bona fide purchaser without notice." And it is said in § 4535: "If one with notice sell to one without notice, the latter is protected; or if one without notice sell to one with notice, the latter is protected, as otherwise a bona fide purchaser might be deprived of selling his property for full value." The mere fact that the purchaser took a quitclaim deed is insufficient of itself to negative the purchaser's good faith, etc. *Marshall* v. *Pierce,* 136 *Ga.* 543 (4) (71 S. E. 893). In the case of *Williams* v. *Smith,* supra, it was held: "When it is affirmatively shown that the defendant is a bona fide purchaser for value from one claiming under the common grantor, and there is nothing to show actual knowledge to the purchaser of the alleged equity, or knowledge of any fact sufficient to put him upon inquiry, the presumption arises that he is a purchaser without notice, and the onus of proving notice is shifted to the plaintiff."

It will also be observed from the allegations of the petition that the administratrix sold the land under an order from the ordinary, and the sale of property by an administrator under proper order from the court of ordinary would ordinarily divest the heirs of the estate of the title to the property sold. See *Clements* v. *Henderson,* 4 *Ga.* 148 (48 Am. D. 216); *McDade* v. *Burch,* 7 *Ga.* 559 (50 Am. D. 407); *Patterson* v. *Lemon,* 50 *Ga.* 231 (1), 235. *Copelan* v. *Kimbrough,* 149 *Ga.* 683, 686 (102 S. E. 162). The Civil Code (1910), § 4039, declares: "To divest the tit'e of the heir at law, the administrator must have authority to sell; if there be irregularities, or he fail to comply with the law as to the mode of sale, the sale is voidable, except as to innocent purchasers. And as to innocent purchasers the same is good and divests the title of heirs." *Merritt* v. *Jones,* 136 *Ga.* 618 (71 S. E. 1092); *King* v. *Cabaniss,* 81 *Ga.* 661 (3), 667 (7 S. E. 620).

2. We are of the opinion that the demurrer should have been sustained for another reason. The plaintiffs should have all the parties defendant named in the petition served and made parties. "In a proceeding in equity, all persons having a legal or equitable

interest in the subject-matter of the suit must be made parties," etc. "No court of equity should undertake to reform a written instrument conveying title to property, in an essential matter, without having before it all of the parties to be affected by the proposed reformation." *Wyche* v. *Green,* 32 *Ga.* 341 (1, 2). At least three or four of the parties named in the petition as purchasers, who were warrantors to subsequent purchasers, were not served and were stricken from the petition by amendment. We are of the opinion that they were necessary parties to the case and should have been so made and served.

3. The demurrer should have been sustained because the plaintiffs do not show their right to sue. Generally heirs at law can not sue for land without the consent of the administrator, if there is one. *Anderson* v. *Goodwin,* 125 *Ga.* 663 (5) (54 S. E. 679); *Crummey* v. *Bentley,* 114 *Ga.* 746 (3) (40 S. E. 765); *Yopp* v. *A. C. L. R. Co.,* 148 *Ga.* 539 (2) (97 S. E. 534). The petition in the instant case shows that there is, or was, an administratrix, and there is nothing to show that the administratrix has ever been discharged, or her consent given to bring the suit, or an arbitrary refusal to grant such permission.

We conclude from all of the foregoing that the court did not err in sustaining the demurrer and in dismissing the petition.

*Judgment affirmed. All the Justices concur.*