THOMAS *v.* COUCH *et al.*

No. 7682.  December 15, 1930.

*Austin & Boykin, E. M. Sasserville,* and *R. B. Blackburn,* for plaintiff.

*J. W. Mason, W. D. Thomson, Branch & Howard* and *E. L. Tiller,* for defendants.

HILL, J. (After stating the foregoing facts.)

■ The petition alleges that the plaintiff was born on February 5, 1900. The suit was filed on February 4, 1928. The petition fails to allege that plaintiff was in possession of the premises, or had ever been. One becomes of full age on the day preceding the twenty-first anniversary of his birth, on the first moment of that day. 31 C. J. 987, § 4 (2); Browne's Blackstone's Com. 155; U. S. *v.* Wright, 197 Fed. 297 (116 C. C. A. 659). The Civil Code (1910), § 3019, provides that the age of legal majority in this State is twenty-one years; until that age all persons are minors. According to the foregoing rule, the plaintiff attained the full age

of twenty-one years on the first moment of the day of February 4, 1921. She could have brought suit on that day. Seven full-years from February 4, 1921 ended at midnight on February 3, 1928. Her suit was filed February 4, 1928, on the first day of the eighth year after she attained her majority. The rule as laid down in our Civil Code (1910), § 4 (8), with reference to the first and last day, does not apply where the bar is in terms of years or months rather than in days. See *Peterson* v. *Ga. R. Co.*, 97 *Ga.* 798 (25 S. E. 370); *Jones* v. *Kern*, 101 *Ga.* 309 (28 S. E. 850); *Texas Co.* v. *Davis*, 157 *Ga.* 538 (122 S. E. 62); *Robinson* v. *Smith*, 159 *Ga.* 269, 270 (6) (125 S. E. 593). From the allegations of the petition, the plaintiff was thirteen or fourteen years of age when her grandmother died, and she did not bring suit until more than the full period of seven years had run after she attained her majority. See *Lundy* v. *Lundy*, 141 *Ga.* 387 (81 S. E. 129).

■ It appears from the petition that the plaintiff was over twenty-eight years of age, and that the defendants had had actual possession since 1916. It is alleged that Sarah Beedles conveyed a life-estate to John Dent, and a copy of the deed was attached to the amendment of the petition. This instrument purports to have been made in consideration of Dent taking care of Sarah Beedles in an ample and substantial manner, and for the natural love and affection she had for her brother. The deed shows that it "is to be void, and the maker of same upon her motion can so declare it, unless said John Dent amply provides for Sarah Beedles in a comfortable and substantial manner, and the maker of this deed is to be the judge of same. Upon the death of said John Dent the property herein reverts back to the maker of this deed. If said John Dent should ever encumber said property, then this deed shall immediately become void, and title revert back to the maker thereof." It is insisted that John Dent acquired only a life-estate by virtue of this deed, and that as to the twenty-acre tract the sale by the administrator was void because John Dent held only a life-estate. But John Dent as administrator of the estate of Sarah Beedles obtained an order for sale, and offered the entire fee-simple title at administrator's sale. It has been held that an administrator can sell a lesser estate under an order to sell a greater. *King* v. *Cabaniss*, 81 *Ga.* 661 (7 S. E. 620); *Kingsbery* v. *Love*, 95 *Ga.* 543 (22 S. E. 617); *Robinson* v. *Smith*, 159

*Ga.* 269, supra. But John Dent, being both administrator and life-tenant, could not assert a possession as life-tenant adverse to his rights as administrator. The administrator can sell the remainder during the possession of the life-tenant, unless the possession is adverse. *Smith* v. *Samuels,* 133 *Ga.* 790 (1 *a*) (66 S. E. 1086). When, therefore, Dent, as administrator, offered for sale the entire fee without any mention of his life-estate, he would be estopped as against the purchaser and her grantees to claim a life-estate. *Crumley* v. *Laurens Bkg. Co.,* 141 *Ga.* 603 (2) (81 S. E. 871). *Brice* v. *Sheffield,* 121 *Ga.* 216 (2) (48 S. E. 925). Even if Emily Ring bought only a reversionary interest at the sale, subject to the life-estate of John Dent, yet, when she conveyed the premises to John Dent in 1914, it would give him a fee by merger, and his life-estate, if any, would thus terminate. Civil Code (1910), § 3682; *Wilder* v. *Holland,* 102 *Ga.* 44 (29 S. E. 134). When John Dent conveyed the fee-simple title to the land in controversy to the Couches in 1916, received the purchase-price from them, and executed to them a deed and put them in possession, such possession was adverse and hostile to the entire fee, and prescription would run as against the plaintiff from the moment she was twenty-one-years of age, and as to the twenty-one acre tract thus conveyed the defendants would have a good prescriptive title under the facts alleged in the petition.

The petition alleges that John Dent, the administrator, perpetrated "a fraud and deceit" upon the plaintiff, by procuring letters of administration in the court of ordinary upon the representation that he was the next of kin and sole heir, when in fact the plaintiff was the sole heir; and by procuring an order from the court of ordinary to sell the land for the payment of debts, when in fact there were no debts; and by an indirect purchase of the land at his own sale, which purchase plaintiff has a right to set aside. It will be observed that the petition does not allege that the defendants participated in any of the alleged fraud; but it is alleged that the purchasers had constructive notice sufficient to put them upon inquiry, and that their failure to press this inquiry to the point of discovery that the plaintiff and not John Dent was the true heir destroyed their status as innocent purchasers for value without notice. If it be conceded that John Dent did obtain the title to the land in controversy by fraud in 1914, no sufficient notice to

W. D. Couch and A. G. Couch, who bought the same land in 1916, and who with their vendees held title from 1916 to the date of filing the suit, is alleged. Our Civil Code (1910), § 4120, provides that "A title obtained by fraud, though voidable in the vendee, will be protected in a bona fide purchaser without notice." And § 4531 provides that a bona fide purchaser for value and without notice of an equity will not be interfered with by a court of equity. And § 4535 provides that if one with notice sell to one without notice, the latter is protected; or if one without notice sell to one with notice, the latter is protected. The court of ordinary appointed John Dent administrator in a proceeding which, so far as the petition shows, was regular in all respects. But it is insisted that Dent practiced a fraud on the court, by falsely alleging that he was the sole heir of the intestate when he was not. If the court of ordinary appointed an improper person as administrator, the appointment was not void for any reason alleged, and can not be attacked collaterally. *Ala. Great So. R. Co.* v. *Hill,* 139 *Ga.* 224 (76 S. E. 1001, 43 L. R. A. (N. S.) 236, Ann. Cas. 1914D, 996) ; *Bowen* v. *Gaskins,* 144 *Ga.* 1 (85 S. E. 1007). It will be observed that there is no allegation that the defendants had actual knowledge of the fraudulent appointment, if it were such, or that they participated in it.

"An administrator's deed, accompanied by the order of the ordinary granting leave to sell, is not mere color of title, although the letters of administration may not be produced. When the order of the court of ordinary granting leave to the administrator to sell the land belonging to the estate of his intestate has been shown, the law presumes that all has been done which was necessary to have been done before the same was granted. This includes not only the necessity of the sale, and that it would be for the benefit of the heirs and creditors, but also the fact that the applicant was the administrator and authorized to make the sale." *Roberts* v. *Martin,* 70 *Ga.* 196; *Bunger* v. *Grimm,* 142 *Ga.* 448, 450 (83 S. E. 200, Ann. Cas. 1916C, 173). In *Copelan* v. *Kimbrough,* 149 *Ga.* 683, 685 (102 S. E. 162), it was said: "The controlling question is whether the order of the court of ordinary granting leave to sell the land is void. If it is void, it may be attacked collaterally. If valid on its face, it can not be collaterally attacked. . . The court of ordinary has general jurisdiction of

estates, testate and intestate. 'The order of the court of ordinary granting leave to an administrator to sell lands belonging to the estate he represents is his authority for so doing. The authority being shown, the law "presumes the court of ordinary required all the law requires to have been done before granting the order to sell, and we will not go behind that judgment." *Clements* v. *Henderson,* 4 *Ga.* 154 [48 Am. D. 216]. . . The order to sell, being a judgment of a court of competent jurisdiction, imports legally a necessity for the sale, and such judgment can not be attacked and set aside collaterally. It is not only leave to sell, but it is a judgment of the court that such sale will be for the benefit of heirs and creditors of the estate. In favor of this judgment we are to presume that the court did its duty.'" An order of the court of ordinary granting leave to sell land is a judgment of a court of original, general, and exclusive jurisdiction of the sale and disposition of real property belonging to deceased persons' estates, and can not be collaterally attacked. *Davis* v. *Howard,* 56 *Ga.* 430; *Stuckey* v. *Watkins,* 112 *Ga.* 268 (37 S. E. 401, 81 Am. St. R. 47) ; *Williams* v. *O'Neal,* 119 *Ga.* 175 (45 S. E. 978). In the case last cited it was held that "Where an application by an administrator to the court of ordinary, for leave to sell property of his decedent, represented that the purpose of the intended sale was to pay debts of the estate, and an apparently valid judgment was rendered granting the application, the judgment containing no recitals as to the grounds on which the application was based, it was not a ground to set that judgment aside as void that in fact the estate in question owed no debts."

■ It is contended by the plaintiff that the sale by the administrator to Emily Ring, which was made at public outcry on the first Tuesday in October, 1914, was in reality a sale by the administrator to himself, because he bought back as an individual the property on the same day that he as administrator conveyed it away. A sale by an administrator to himself is not void but merely voidable. Civil Code (1910), § 4120. The fact that the deeds were made on the same day and recited the same consideration does not amount to a void administrator's sale, and notice of the alleged fraud is not presumed. *Warner* v. *Hill,* 149 *Ga.* 464 (100 S. E. 393) ; *Isom* v. *Nutting,* 153 *Ga.* 682, 685 (113 S. E. 197). As the Couches paid value in money for the land purchased, they are

presumed to be bona fide purchasers without notice. *Williams* v. *Smith,* 128 *Ga.* 306 (57 S. E. 801). But it is contended by the plaintiff that W. D. and A. G. Couch had notice of the fraud alleged to have been perpetrated, as is shown by their taking and placing on record an affidavit in which John Dent swore that he was the sole heir of Sarah Beedles, and that Sarah Beedles did have a son named John Parris, who had died fifteen years previously without having married and without leaving any children. If the Couches had made inquiry and found the facts to be as plaintiff alleges, this would not affect the title of Frederick Schubach and Cullen Tice, the present owners of the property in controversy. As to them the plaintiff contends that the affidavit was placed on record. It does not appear that the record of this instrument was one which the law required to be placed on record, and there is no contention that Schubach and Tice ever read it or heard of it, or were in duty bound to do so. The allegations of the petition showed a legal title in the defendants, and the general demurrer was properly sustained.

■ The Civil Code (1910), § 4622, provides that actual fraud consists of any kind of artifice by which another is deceived. Constructive fraud consists in any act of omission or commission contrary to legal or equitable duty, trust or confidence justly reposed, which is contrary to good conscience and operates to the injury of another. The former implies moral guilt; the latter may be consistent with innocence. Fraud which will prevent possession of property from becoming the foundation of prescription must be actual or positive fraud, not constructive or legal fraud. § 4177. The petition did not allege that the defendants participated in the fraud, if any, as in *Cowart* v. *Young,* 74 *Ga.* 694, and *West* v. *Rodahan,* 46 *Ga.* 553, cited by counsel for the plaintiff.

■ The present suit is not one in ejectment. The plaintiff contends that the title to the land in controversy is now in her and has been ever since the death of Sarah Beedles; and the purpose of this equitable action is to remove certain clouds on her title, to have title decreed in her, and to cancel certain deeds which she insists are clouds on her title. In *Weyman* v. *Atlanta,* 122 *Ga.* 539 (50 S. E. 492), this court held that in order to maintain a petition to remove a cloud on title, either the land must be wild land, or it must appear that the plaintiff is in possession, or that

the plaintiff has no present right of possession. *Mentone Hotel Co. v. Taylor,* 161 *Ga.* 237, 241, 242 (130 S. E. 527). As stated before, the petition alleged facts which show that the defendants have legal title to the land in controversy.

Applying the foregoing rulings to the facts alleged in the petition, the plaintiff had no right to recover; and the court below did not err in sustaining the demurrer to the petition as amended, and in dismissing the case.

*Judgment affirmed. All the Justices concur, except Russell, C. J., dissenting.*

ATKINSON, GILBERT, and HINES, JJ., concur in the result.

GILBERT, J. I concur in the judgment rendered. I also concur in the general principle, which has long been recognized, that one becomes the full age on the day preceding the twenty-first anniversary of his birth. I do not concur, however, and respectfully dissent from the conclusion that prescription by possession under color of title for seven years ripened on February 3, 1928, as against one who, born on February 5, 1900, became twenty-one years of age on February 4, 1921. In my opinion, prescription does not begin to run until the first moment of the twenty-second year, which in this case would be the first moment of February 5, 1921. Seven years from February 5, 1921, was completed at the end of February 4, 1928. The suit in this case was brought on February 4, 1928, and was brought in time. The judgment, if justified, is justified on other grounds, to wit, that the title to the property for which the suit was brought has found its way into persons who are innocent purchasers and can not be affected by the fraud of predecessors.