LEWIS *et al. v.* PATTERSON *et al.*

No. 13425.   December 5, 1940.

*George E. Simpson* and *Franklin & Eberhardt,* for plaintiffs in error.

*Langdale, Smith & Tillman,* contra.

BELL, Justice. ■ Only the general grounds of the demurrer were argued in this court, and only three contentions based thereon are presented for our consideration. It is our opinion that all of them are without merit. The first contention is that the petition as amended does not show that the executor of J. M. Patterson assented to the legacy on which the plaintiffs predicated their alleged cause of action. It appears from the petition that J. M. Patterson, the testator, died on September 1, 1925, and that his will was duly probated. The date of probate, however, does not appear, nor was it alleged that either H. T. Reddick, who was nominated in the will, ever qualified as executor, or that any other person was appointed as administrator with the will annexed. Similarly, there was no express averment of an executor's assent. It did appear from the *evidence* that C. L. Patterson, son of the testator and father of the plaintiffs, was appointed and qualified as administrator with the will annexed, on November 2, 1925, after refusal of Reddick to serve; but in considering the demurrers we are confined to the facts as they are stated in the petition.

The Code declares: "Every person having possession of a will shall file the same with the ordinary of the county having juris-

diction; and on his failure to do so, the ordinary may attach for contempt and fine and imprison the person °thus withholding the paper until the same shall be delivered." § 113-610. "The executor shall offer the will for probate as soon as practicable after the death of the testator, and shall qualify, unless restrained by the will, within 12 months after the same is admitted to record." § 113-615. "If there is any reason why the executor can not act, he ought so to declare." *Trustees of the University of Georgia* v. *Denmark,* 141 *Ga.* 390 (3), 401 (81 S. E. 238). In view of the duties thus imposed by law, it must be assumed, in the absence of anything to the contrary, that the will was probated with reasonable promptitude, and that either the nominated executor qualified and served, or that some other person was duly appointed administrator with the will annexed, and qualified as such. As indicated above, the petition alleged that the will was "duly probated and admitted to record." Later it was averred that "By virtue of said will the said Mrs. C. L. Patterson and her said children became seized" of the choses in action described in the petition. Following these averments were others to the effect that in January, 1927, more than sixteen months after the death of the testator, Mrs. Patterson, mother of the plaintiffs and a legatee having an equal interest with them, was in possession of these choses in action, and delivered them to the debtor, Vickers, as part payment for the land in question. She either acquired them from a legal representative, or her possession was without right. The latter will not be presumed. *English* v. *Poole,* 31 *Ga. App.* 581 (4) (121 S. E. 589); *Haas* v. *Godby,* 33 *Ga. App.* 218 (3), 226 (125 S. E. 897). "All property, both real and personal, being assets to pay debts, no devise or legacy passes the title until the assent of the executor is given to such devise or legacy." Code, § 113-801. "The assent of the executor may be express or may be presumed from his conduct; the executor can not, however, by assenting to legacies, interfere with the rights of creditors, nor can he, by capriciously withholding his assent, destroy the legacy." § 113-802. The fact that there may have been debts did not prevent the executor from assenting to the legacy; and if assent is once given, it is generally irrevocable. *Watkins* v. *Gilmore,* 121 *Ga.* 488 (3) (49 S. E. 598); *Wilson* v. *Aldenderfer,* 183 *Ga.* 760 (3) (189 S. E. 907). Nor is much assent void merely because it may have been made within twelve

months after appointment and qualification of the executor. *Walker* v. *Horton,* 184 *Ga.* 429 (1-*a*) (191 S. E. 462).

Since there is a presumption that executors will perform their duties and will thus take care of estates entrusted to them (*Wilson* v. *Aldenderfer,* supra), where nothing else appears, the assent of an executor to a legacy may be presumed or implied from possession of the property by the legatee. *Jordan* v. *Thornton,* 7 *Ga.* 517 (2) ; *Parker* v. *Chambers,* 24 *Ga.* 518 (6) ; *Thaggard* v. *Crawford,* 112 *Ga.* 326 (37 S. E. 367) ; *Citizens Bank of Vidalia* v. *Citizens & Southern Bank,* 160 *Ga.* 109 (127 S. E. 219) ; *Reid* v. *Butt,* 25 *Ga.* 28 (3) ; *Haas* v. *Godby,* supra. It appears from the foregoing that more than a year after the death of the testator Mrs. Patterson, one of the legatees, was in the possession and control of the property bequeathed jointly to her and her children. As she was equally interested with the children, her possession was lawful, as the possession of any one of them would have been, except perhaps in case of an infant, provided such possession was based upon assent by the executor, either express or implied. The legatees being owners in common, possession by one of them would have been lawful under principles of law relating to joint owners or tenants in common. Code, §§ 85-1001, 85-1002, 85-1003; *Thomson Development Co.* v. *Crutchfield,* 161 *Ga.* 448 (4) (131 S. E. 154) ; *Lilienthal* v. *Champion,* 58 *Ga.* 158; *Deal* v. *State,* 14 *Ga. App.* 121, 130 (80 S. E. 537). The assent of the executor to a legacy to a tenant for life will inure to the benefit of remaindermen. Code, § 85-709. Under the same principle, it seems that assent as to one tenant in common would necessarily inure to the benefit of cotenants. See *Hood* v. *Hood,* 169 *Ga.* 378 (2) (150 S. E. 552). If the principle applies to estates to be enjoyed consecutively, why should it not apply in like manner to estates to be held and enjoyed simultaneously and in common? It seems that it could be applied with even greater reason in case of tenants in common, since a life-tenant and a remainderman hold separate and distinct estates in the same property and do not bear so close a relationship as tenants in common. *Lazenby* v. *Ware,* 178 *Ga.* 463 (173 S. E. 86). It follows that the allegations of fact in this case were sufficient to raise a presumption of assent both as to Mrs. Patterson and as to the children, and that in view of the petition as a whole, including the averment "By virtue of said will the

said Mrs. C. L. Patterson and her said children became seized" of the stated choses in action, the petition was not subject to general demurrer on the ground that it failed to show assent by the executor.

■ The next contention is that the petition shows on its face that the only remedies available to the plaintiffs were (1) a suit against the executor and the surety on his bond, if a bond was given, on account of a devastavit caused by an unauthorized investment, or (2) a suit by the legatees against D. L. Vickers, the debtor, upon the notes or note and account, on the theory that surrender of them by their mother as part payment for the land did not constitute a discharge or payment of these obligations. There is no merit in either branch of this contention. If the petition showed assent to the legacy, as we have held that it did, then, according to the allegations, the property passed from the control of the executor as such, and he was no longer accountable therefor to the legatees. *Peoples National Bank of Shelbyville* v. *Cleveland,* 117 *Ga.* 908 (6) (44 S. E. 20) ; *Hood* v. *Hood,* 174 *Ga.* 381 (162 S. E. 714) ; *Miller* v. *Harris County,* 186 *Ga.* 648 (198 S. E. 673). As to the second feature of the contention, even if the legatees might have elected to sue the debtor, they were not bound to do so, but could ratify the act of their mother in surrendering the choses in action as stated, and sue for a proportionate interest in the land. Code, § 105-105; *Williams* v. *Roberts,* 92 *Ga.* 291 (18 S. E. 545) ; *Georgia Railroad Bank & Trust Co.* v. *Liberty National Bank & Trust Co.,* 180 *Ga.* 4 (4-*f, g*) (177 S. E. 803).

■ Thirdly, it is insisted that the petition showed upon its face that the plaintiffs were barred by laches, and that on this ground the general demurrer should have been sustained. A considerable portion of the argument relates to the conduct of the plaintiffs' father, C. L. Patterson. Patterson, however, was not a party in the case and had no legal interest in the subject-matter of the action. Two of the plaintiffs were minors at the time the suit was filed, November 1, 1938. The oldest attained her majority on January 4, 1935. The statute of limitations would not have begun to run against any of them during minority, and there is no basis for the contention that the petition showed they were barred by laches. *Bleckley* v. *Bleckley,* 189 *Ga.* 47 (12) (5 S. E. 2d, 206) ; *Nelson* v. *Estill,* 190 *Ga.* 235 (2), 243 (9 S. E. 2d, 73).

■ We come now to the motion for new trial. It is contended by the plaintiffs in error that the evidence was not sufficient to support the verdict, and in this connection they have again urged one or more of the contentions referred to above. The defendants in error insist that the evidence demanded the verdict as rendered, and that in this view all of the special grounds of the motion for new trial are without merit, relating as they do only to the charge of the court. We can not agree to either view; but since we are of the opinion that some errors were committed, it seems at this point more appropriate to demonstrate that the verdict for the plaintiffs was not demanded, than to show, as might be done, that it was authorized. There was much documentary evidence, but the only witness introduced was C. L. Patterson, who testified to the existence of a note for $3000 and an account for $1000, conforming to the descriptions set forth in the petition. He testified in support of the petition as to the transaction with Vickers, and with the Citizens Bank of Valdosta through its president, J. F. Lewis. It appeared from the evidence that Vickers had died before the trial, and the alleged note and the account were not introduced.

(1) It was a fair inference from Patterson's testimony that he was the moving cause in the litigation, and that he acquiesced in a suggestion that he "wait and let Mr. Lewis improve it [the property] and he would get it" for his wife and children.

(2) It was shown by copies of records in the ordinary's office that C. L. Patterson was appointed as administrator with the will annexed, and that he qualified by taking oath and giving bond on November 2, 1925, on refusal of the nominated executor, H. T. Reddick, to serve as such. A copy of his bond as such administrator was introduced in evidence, and appeared to have been signed by the United States Fidelity & Guaranty Company as surety. Notwithstanding this documentary evidence, the witness Patterson testified: "I don't know about being made administrator with the will annexed. I don't remember about giving a bond with the United States Fidelity & Guaranty Company. I never paid for any bond. I would not say that I did not give a bond for one thousand dollars as administrator with the will annexed. I just do not remember about it." Later his memory was refreshed, and he testified about having the note in his possession *as administrator*.

(3) He testified that he and his wife, together with Vickers and Mr. Lewis, were all present in the office of the Citizens Bank of Valdosta at the time when the land was purchased from Vickers and the loan was obtained from the bank. He personally delivered the note to Vickers for his wife as part of the purchase-money for the land, and at the same time and in his presence she was credited with another $1000 represented by the account, making in all $4000 of the agreed consideration of $6000. He testified that on a previous occasion he had discussed the matter of obtaining the loan, with Mr. Lewis: "I told him just how I had been treated about the property of my father and I told him about the will and everything connected with it. I told Mr. Lewis that I was endeavoring to borrow money for the purpose of setting [settling] a lawsuit. I told Mr. Lewis just exactly how Mr. Vickers had done, about the lawsuit, and we had agreed to compromise it by paying him two thousand dollars. I asked Mr. Lewis what he would do about it. He said to get Colonel Branch to write him about it and he would loan my wife the money and D. L. Vickers could make her a deed. That was practically all that was said." This testimony was given by him on his first appearance on the witness stand, and at that time the only further evidence given by him as to notice to the bank of any interest which the plaintiffs might have had in the notes and the account in question was the following: "The deed from D. L. Vickers to my wife and the paper that Mr. Lewis took from my wife as security for the debt were prepared in the office of the Citizens & Southern Bank where Mr. Lewis's office was at that time. My wife, D. L. Vickers and myself went to Mr. Lewis's office the day the deeds were prepared. The loan was closed that day. My wife gave Mr. Drew Vickers a check for two thousand dollars that day, the best I remember. Mr. Vickers got two thousand dollars for the deed and also the notes that I have already told you about. All of this was done in Mr. Lewis's office and Mr. Lewis was present." Some time later, on being recalled, he testified as follows: "I have already testified that I went to Mr. Lewis's office in the Citizens & Southern Bank Building in Valdosta, Georgia, and requested a loan of some thirty five hundred dollars. I told Mr. Lewis at the time that I was suing D. L. Vickers for our home place, and explained it to him that we had four thousand dollars of notes, a three thousand dollar note and the balance was supposed to be a

note or account—I did not know which—as I had never seen it, and we wanted to surrender them to him and wanted to borrow two thousand dollars to pay Drew Vickers with. I told Mr. Lewis that these notes came from Drew Vickers. I told Mr. Lewis that I was appointed administrator and found the notes in the First National Bank in an envelope, three thousand dollars. The remark he made to me was: 'That is blood money.' I told him that Drew Vickers had bought the farm for four thousand dollars and that it was worth a whole lot more than that. I told him about the will and that the notes were left to my wife and children, and that I was left out of the will. I told him that Drew Vickers and I had come to a settlement and he had agreed to give me six thousand dollars or take six thousand dollars, and when I went to settle I turned the note and supposed-to-be account over to Mr. Vickers and I gave him six thousand dollars with the two thousand dollars I got from Mr. Lewis."

Considering the relationship of this witness, and the discrepancies in his testimony as above indicated, it could not be correctly said that the jury were bound to accept his evidence as true, notwithstanding he was the only witness introduced. Where a disinterested witness, who is in no way discredited by other evidence or his own, testifies from his own knowledge to a fact which is not in itself improbable or in conflict with other evidence, the witness is to be believed, and the fact testified to is to be taken as legally established. But this does not mean that the jury is bound in every case to accept evidence as true although it is not contradicted by direct evidence. It may be inherently subject to discredit, or so from the circumstances. *Penny* v. *Vincent,* 49 *Ga.* 473; *Armstrong* v. *Ballew,* 118 *Ga.* 168 (2), 170 (44 S. E. 996); *Louisville & Nashville Railroad Co.* v. *Trout,* 141 *Ga.* 121 (80 S. E. 622); *Whiddon* v. *Hall,* 155 *Ga.* 570 (6), 578 (118 S. E. 347); *Redd* v. *Lathem,* 32 *Ga. App.* 214 (123 S. E. 175); *Fincher* v. *Harlow,* 56 *Ga. App.* 578 (193 S. E. 452); *Caldwell* v. *Caldwell,* 59 *Ga. App.* 637 (1 S. E. 2d, 764). In this case the testimony of Patterson was not so certain, clear, and consistent as to establish the plaintiffs' case as a matter of law. Since his credibility was thus a matter for the jury, and it therefore can not be said that the verdict in favor of the plaintiffs was demanded by the evidence, we are brought to a consideration of the special grounds of the motion for a new trial.

■ The court charged the jury that "a will of a deceased person, when duly probated and recorded, is notice to the world of the title to the property granted by the will." In special ground 10 this charge was assigned as error upon the ground that it was inapplicable to the issues in the case, in that a will so probated and recorded would not charge a purchaser of land with notice of such an interest or equity as the plaintiffs claimed in this case. This complaint against the charge is well taken. In *Whittle* v. *Tarver,* 75 *Ga.* 818 (2), it was held that "Where a claimant of land derived his title from one who derived title under a will which imposed a charge on the land, the record of the will was notice to the claimant; and it was error to charge that, unless he had actual notice of the charge on the land, it was not subject." In that case, however, the question of title was directly involved, and it was properly held that as to one who claimed property directly under the will, the record of the will was notice to such claimant. The same principle was ruled in *Colquitt & Baggs* v. *Tarver, 45 Ga.* 631, but in the latter case it was further held that such record would not be notice as to other property purchased since the testator's death *with trust funds arising from the sale of the encumbered property.* This latter ruling, and not the former, applies in the present case. In several cases of this general class, it has been stated by this court that where a purchaser takes with notice, either "actual or constructive," he will hold the property subject to such equity. *Lewis* v. *Equitable Mortgage Co.,* 94 *Ga.* 572 (3) (21 S. E. 224); *Talley* v. *Mozley,* 149 *Ga.* 529 (101 S. E. 120); *Vaughan* v. *Atlantic Life Insurance Co.,* 168 *Ga.* 129 (147 S. E. 387). But the phrase "constructive notice" as *thus used* does not refer to the notice which arises merely from the record of a deed, will, or other muniment of title. Whether the expression is strictly correct as one of name or description, still as applied *to this case* it could refer only to that notice with which a person is charged where he has sufficient notice to excite attention and put him on inquiry. In such case, he is affected with notice of everything to which it is afterwards found such inquiry might have led. As to this, it was said in *Hunt* v. *Dunn,* 74 *Ga.* 120 (2), 124, "That which puts a party upon inquiry is actual notice." See also Code, § 37-116; *Williams* v. *Smith,* 128 *Ga.* 306 (2) (57 S. E. 801); *Isom* v. *Nutting,* 153 *Ga.* 682, 686 (113 S. E. 197). We can not agree that the excerpt here under consideration

could not have misled or confused the jury in view of *other* instructions given. It is true that the judge several times in his charge referred to notice and actual notice. He also charged in effect that in so far as the question of notice was concerned, the plaintiffs would be entitled to recover, if Mr. Lewis knew the facts touching their interest or had knowledge of such facts as would put a reasonably prudent person on inquiry. Nevertheless, it can not be said that any of these expressions were such as to read out of the charge the statement that the record of a will is notice to the world of the title to the property granted therein, or to explain the statement so that the jury could not have been misled thereby. They might have thought that the record of the will would constitute actual notice or would be sufficient to put a person on inquiry. Again, they may have disbelieved the witness on the issue as to notice, and have placed their finding solely upon such record. Accordingly, it must be held that this charge was erroneous and was such error as to require a new trial.

The judge charged the jury as follows: "If you believe, under the law that I have given you in charge, that the plaintiffs had an interest in the lands when the title was taken in the name of Mrs. C. L. Patterson, then I charge you that under the deed under which the defendants claim title conveyed only the interest of Mrs. C. L. Patterson in the land; and the children's interest was not affected by that deed. Accordingly, if you believe that the plaintiffs had an interest in the land when title was taken in the name of their mother, then I charge you that they still have that interest, and you should find your verdict in favor of the plaintiffs, if you believe in all other respects involved in the pleadings and the evidence they are entitled to recover." In ground 12 movants complained of the first sentence, and in ground 13 they complained of the second sentence. Each portion of the charge was assigned as error because it ignored or excluded the question of notice and good faith, and as to the latter portion it was contended that it was vague and confusing to the jury. We think these charges were subject to the criticisms made, and that they were not cured by instructions given elsewhere in reference to notice. "The jury should not be left to decide between conflicts in the charge, without having their attention directed thereto by the court and being instructed as to which of the antagonistic principles is correct and

applicable, and which should be disregarded." *Savannah Electric Co. v. McClelland,* 128 *Ga.* 87 (2) (57 S. E. 91); *Morrison v. Dickey,* 119 *Ga.* 698 (2) (46 S. E. 863). The clause at the end of the last sentence, "if you believe in all other respects involved in the pleadings and the evidence in the case they are entitled to recover," referred only to the pleadings and the evidence, and did not amount to a qualification of these excerpts by other instructions. Furthermore, even if this clause might have been taken as referring to other charges, it would not have relieved the error, because, as we have pointed out above, another portion of the charge itself was erroneous.

■ In ground 5 the movants complained of the following charge: "In order for the plaintiffs to recover, it must appear from the evidence in the case that Mr. J. F. Lewis, at the time of the transactions alleged in these pleadings and by the plaintiffs, in which it is alleged that he acquired the interest of these plaintiffs, it must appear that he at that time had actual notice of the interest of these plaintiffs." This charge was assigned as error upon the ground that it intimated an opinion that the plaintiffs did have an interest in the land. We think the charge was subject to objection on this ground, but since the judgment must be reversed for other reasons, we need not determine whether it constituted reversible error, in view of a further charge that the plaintiffs could not recover unless it appeared that "the legacy given them in the will introduced was assented to and consented to by the executor."

■ Ground 6 complained of a charge to the effect that before the plaintiffs would be entitled to recover, it should appear from the evidence that the debts of the estate were and have been all paid. This charge was erroneous, but the error was against the plaintiffs rather than the defendants. *Watkins v. Gilmore,* 121 *Ga.* 488 (3) (49 S. E. 598); *Wilson v. Aldenderfer,* 183 *Ga.* 760 (3), supra.

■ Grounds 7 and 8 complained of different excerpts upon the ground that they did not comport with the principle: "If one with notice sell to one without notice, the latter shall be protected; or if one without notice sell to one with notice, the latter shall be protected, as otherwise a bona fide purchaser might be deprived of selling his property for full value." Code, § 37-114. Grounds 15, 16 and 17 complained that the judge erred in failing without

request to give in charge stated propositions based on this principle. Even if the excerpts complained of might in a technical sense have been subject to the criticism thus lodged against them, they afforded no cause for a new trial under the facts of the case. This is true for the reason that the plaintiffs sought to show notice to the bank only by proving notice to its officer, and if there was notice to one there was notice to both. Conversely, if one did not have notice, so with the other. For the same reason, there was no error in the omissions to charge, of which the movants complained.

■ Ground 18 complained of instructions to the jury at a time when it seemed they were about to make a mistrial. It is contended that the charge unduly urged the jury to reach a verdict, and amounted to coercion. Since this ground of the motion relates to a matter which is not likely to occur on another trial, the question raised need not be decided. Special ground 9 was clearly without merit. For the reasons stated in divisions 5 and 6, the court erred in refusing a new trial.

*Judgment reversed. All the Justices concur.*