COTTON STATES LIFE INSURANCE COMPANY *vs.* EDWARDS, administratrix.

1. The continuance of cases on account of the absence of counsel is not favored, and such absence is no cause for postponement, unless in cases of necessity or misconception. Absence without leave, to attend trials of cases pending in other courts, is no ground for continuance.

(a.) The judges of the superior courts are invested with discretion as to the continuance of cases for the term, or their postponement during the term, and unless such discretion is flagrantly abused in overruling a showing for a continuance, this court will not interfere with its exercise.

2. If no objection be made to the asking of leading questions or the proving by parol of the contents of writings, without showing them to be lost or inaccessible, the admission of such evidence and the allowance of such questions will furnish no ground for a new trial. Nor will this be changed by the fact that the moving party was not represented on the trial, if its counsel voluntarily absented themselves, and were not present to raise objections.

(a.) Whether leading questions are to be allowed is largely in the discretion of the court, and this discretion will not be controlled except in extreme cases, although the witness called may be the opposite party in the case.

(b.) It does not appear that parol evidence was improperly admitted, so as to injure the defendant.

(c.) What an agent does within the scope of his authority binds his principal, and this applies not only to his acts, but to all the representations made by him in that business. A corporation can act only by its agent, and within the line of his business · if not the company itself, he is its *alter ego*.

3. Where a policy of insurance contained a provision that if it was terminated by the non-payment of premiums, and for no other cause, after two full years' premiums had been paid, then it should be valid for as many tenth parts of the sum insured as there should have been annual premiums paid; and where the policy was

Cotton States Life Insurance Company *vs.* Edwards, administratrix.

thus terminated, and the secretary endorsed thereon, "This policy is valid for two-tenths of the amount insured, subject to the terms and conditions of the policy," *semble* that the policy had been fully executed, and the company had no further control over the actions of the insured in respect to his going into the torrid zone and other like conditions, and that his going thither thereafter furnished no ground for defence.

(*a.*) If, after full knowledge of the fact that the insured had gone to the torrid zone in violation of one of the conditions of his policy, and that there was a discrepancy in regard to his age, it so appearing from the application for the policy and the proofs of death, the insuring company expressed satisfaction with the proofs, and promised payments, this amounted to a waiver of the forfeiture claimed to result from a failure to comply with such conditions.

(*b.*) An error in stating the age of the deceased in the proof of the death is explainable.

4. In §2850 of the Code, which provides that where a .oss occurs under a policy, and the company refuses to pay it within sixty days after demand by the holder of such policy, they shall be liable to pay him, in addition to the loss, not more than twenty-five per cent on their liability for such loss, and also all reasonable attorney's fees for the prosecution of the suit to recover the same, unless it shall be made to appear to the jury trying the case that such refusal to pay was not in bad faith; the terms " bad faith " are not the equivalent of actual fraud, but they mean any frivolous or unfounded refusal in law or in fact to comply with the requisition of the policy-holder to pay according to the terms of his contract and the conditions imposed by statute.

5. Where a motion for new trial is made, the respondent is entitled to show cause against its grant; and in this case the cause shown made it evident that no other verdict could have been rendered than that which it was sought to set aside, and a new trial was properly refused.

October 21, 1884.

Continuance. Practice in Superior Court. Attorney and Client. Discretion. Witness. Evidence. Principal and Agent. Insurance. Contracts. Waiver. Words and Phrases. New Trial. Before Judge SIMMONS. Bibb Superior Court. October Adjourned Term, 1883.

Mrs. Emma C. Edwards, administratrix of her husband, H. S. Edwards, deceased, sued the Cotton States Life Insurance Company on a policy of insurance on the life of

deceased for $5,000.00. Plaintiff also alleged a demand and refusal to pay in sixty days in bad faith, and claimed damages and attorney's fees.

The defendant pleaded: (1.) The general issue. (2.) That the assured represented his age to be less than the proofs of death showed, whereby he paid a less premium. (3.) The proof of death showed the assured had violated the clause in the policy inhibiting him from passing into the torrid and frigid zones, by passing into the torrid zone, and going from San Francisco to Australia. (4.) That if defendant owed anything on the policy, it was not $5,000, nor any of the sums demanded, but only $789.46, the insured having made but two payments of premiums—one when the policy was issued, and the next, one year thereafter, neither of which was a full year's payment, the full year's premium being $198.15, and the payment being $132.15, leaving $66.00, with interest thereon, due each of the two years; and that he paid nothing from then till his death, nearly nine years thereafter. Bad faith was denied.

It is unnecessary to detail the evidence, further than to state that the policy and two premium notes were introduced, and plaintiff testified that she made the proofs of death and demanded payment; that Obear, the secretary of defendant, both verbally and in writing, said that the proofs were all right, and admitted the claim, but said that the company could not pay, because of a notice which had been served on him by certain attorneys not to pay it; that after obtaining letters of administration, she demanded payment, but it had not been mad     There was also evidence as to the value of attorney's fees. The other material facts are stated in the decision.

The jury found for the plaintiff $789.40, with interest, and $100.00 attorney's fees. Defendant moved for a new trial, on the following among other grounds:

(1.) Because the case was advanced to trial, and tried in the absence of both counsel for defendant, one being in attendance on the United States Court in Savannah, and

the other in attendance on the Supreme Court. [As to the circumstances on which this ground was based, the presiding judge did not certify the statements of the motion to be correct, but added the following certificate:

" My recollection of the facts is as follows: The case was set for trial, under our rules, for Thursday or Friday. On Thursday morning, I received a telegram, announcing the sudden death of my brother. I left immediately for Americus, and remained there Thursday and Friday. On Friday night, I returned, and Saturday morning the bar met for the purpose of setting cases, in accordance with a notice given by the clerk the previous day. In accordance with our rules, this case, not having been disposed of the day it was set, was with others set on that day, the first called for setting. It was called and set under the rules. I do not think that either Mr. Lanier or Mr. Anderson were present Neither had applied for leave of absence, nor had it been granted to either one. The cases were published in the Atlanta and Macon papers as having been set for trial on Tuesday. On that morning, I received a letter from Mr. Lanier informing me of his absence, and asking me to protect him as far as I could in another case set for that day, but saying nothing of the Edwards case. The case was called for trial in its order, when the plaintiff announced ready. I read her counsel Colonel Lanier's letter, and he seemed willing to postpone the case, if his client would consent. She declined to consent, and no legal showing for a continuance being made, I ordered the case to trial, holding that counsel's voluntary absence in attendance in the Supreme Court, in a case not from this circuit, was not a legal showing. If any other rule should prevail, the judges of the superior courts would, in many counties, be powerless to transact the business of the circuit. The Supreme Court is in session most of the time, and eminent counsel could be employed in every circuit, and would be in the Supreme Court nearly all the time. It is due to myself to say that when counsel have heretofore made application in time to attend the Supreme Court, I have never refused it. I can then generally arrange the business so as to excuse them."]

(2), (3.) Because the verdict was contrary to evidence, the weight of evidence and the principles of equity.

(4.) Because there was no evidence to sustain the verdict for attorney's fees.

(5.) Because the court permitted the plaintiff's counsel to ask the plaintiff, " Have you got a letter in your possession in which he (meaning George S. Obear) admits the receipt of the proof?" and in allowing her to answer,

" I thought I had one with me, where he said they were satisfactory.   He says he thinks they are all right, but I thought I had one, and I thought I had it with me, where he said all seems right, but I had one where he says it is satisfactory ; I thought I had it with me ;"—this testimony being illegal for two reasons : one, because the letter should have been produced, and the other, because George S. Obear was not the company, and there was no evidence showing that he was authorized to decide for it.

(6.)  Because the court erred in allowing the following testimony : To the question of plaintiff's counsel to plaintiff as a witness, whether she had interviewed said Obear, March 26th, in company with himself, and what Obear said and admitted at that time, she answered : " He admitted that he owed the policy";—such statement not binding said company, and being calculated to mislead the jury and hurt defendant.

(7.)  Because the court erred in allowing plaintiff's counsel to prove by plaintiff, as a witness, the several sayings or admissions of said Obear, which appear in her evidence, tending, or for the purpose of, binding the defendant, there not being shown by proof any authority in him to bind said company by such sayings or admissions.

(8.)  Because the court erred in allowing N. E. Harris to testify, as a witness, as to the like sayings of said George S. Obear, for the same reason specified in the above sixth ground.

(9.)  Because the court erred in allowing W. Dessau, Esq., to testify as to the value of the fee claimed by the plaintiff's attorneys in said suit, there being no bad faith, or action of any kind on the part of defendant, proved, to justify such evidence as to the charge of fees in said case.

(10.)  Because the court erred in charging the jury as follows : " In cases where insurance companies, either fire or life, act in bad faith towards their policy-holders, the law mulcts them damages in attorneys' fees, and if you believe from the evidence that this defendant acted in bad

Cotton States Life Insurance Company *vs.* Edwards, administratrix.

faith, and you believe these proofs were sufficient, and the demand was made, and they had no sufficient reason to give Mrs. Edwards why they failed and refused to pay this policy, then I charge you she would be entitled to recover her counsel fees";—there being no evidence on which to base this charge.

· (11.) Because the court erred in charging the jury as follows : " If the only reason Obear gave for not paying this money was, that he had received a notice from Lanier & Anderson not to do it, that is not sufficient, under the law, to authorize him to withhold this money. He must have some legal restraint, some bill in equity, or garnishment;"—there being no evidence as to what sort of notice was given, and there being other good reasons that might justify a withholding of the money.

The motion was overruled, and defendant excepted.

LANIER & ANDERSON, for plaintiff in error.

HILL & HARRIS, for defendant.

HALL. Justice.

1. That continuances of causes on account of the absence of counsel are not favored has been more than once decided by this court. Such excuses should be discountenanced ; it is the duty of counsel to attend, and their failure to do so is no cause for postponement, unless in cases of necessity or misconception. Such were the distinct declarations of this court in *Allen vs. The State*, 10 *Ga.*, 85, and these rulings have been since followed. Both the counsel in this case were absent without leave and without notification to the court. One was attending to a case in this court from a circuit other than that in which this cause was pending, and the other to a case in the circuit court of the United States sitting at Savannah. This case was set on Saturday, under the rules of the superior court of Bibb county, to be heard on the following Tuesday. The

counsel had notice that a session of the court would be held on Saturday for setting cases, and from the record it appears that one of them knew that the case was then set to be heard on Tuesday. He was suddenly and unexpectedly called away to attend to a case in this court. He wrote to the judge asking protection as to another case set for the same day, but said nothing about this. Here was no case of necessity or misconception. The counsel may possibly have believed that the case would not be reached, or if reached, would not be tried until later in the term. This belief was not induced by any announcement of the court, or any consent or agreement of the opposite party or his counsel, and without some such cause, it afforded no ground for a new trial. 63 *Ga.*, 428. If counsel take the risk of having the case called and tried in his absence, this also is no ground for a new trial 69 *Id.*, 767. Absence without leave, to attend trials of cases pending in other courts, is no ground for the continuance of causes. 66 *Id.*, 344; 38 *Id.*, 491; 10 *Id.*, 85. Nor is such absence to attend the legislature, where counsel is a member of that body (31 *Id.*, 35), or to meet "other engagements." 21 *Id.*, 6. Upon each of these several subjects, see 66 *Id*, 157; 61 *Id.*, 419; 65 *Id.*, 466; *Poppell vs. The State*, 71 *Ga.*, 276. Nor does it make any difference that the absent counsel has in his possession papers material to the case. *Hook vs. Teasley*, 72 *Ga.*, 901, and cases cited.

The presiding judge, after endeavoring to get plaintiff to consent to a postponement of the cause and failing so to do, ordered it to trial, holding that the voluntary absence of counsel to attend to a case in the Supreme Court, not from the circuit in which he resided, was not a legal showing. We agree with the judge that, if any other rule should prevail, the judges of the superior courts would, in many instances, be powerless to transact the business of their circuits, as the Supreme Court is in session most of the time, and eminent counsel are not unfrequently employed in cases pending there from several different circuits. Be

this, however, as it may, the judges of the superior courts are necessarily entrusted with discretion as to the continuance of cases for the term, or the postponement of their hearing to another period during the same, and unless such discretion is flagrantly abused in overruling a showing for continuance that comes fully up to the requirements of the law, we do not feel authorized and empowered to interfere with its exercise, and will never do so unless some legal right of the party making the showing has been invaded or withheld, and injury or injustice has been thereby done. Where the postponement asked is matter of indulgence and favor, and not of right, we are powerless to interpose. *Clay vs. Barlow,* decided at this term.*

2. The other grounds of the motion for a new trial relate to leading and improper questions propounded to the plaintiff while on the stand as a witness, especially as to the contents of certain letters said to have been written by, and the verbal admissions of, the secretary and treasurer of the defendant's company, and also to like testimony from another witness examined in the cause. We might dispose of these exceptions by holding that leading questions were asked, and the contents of writings which had not been shown to have been lost, or which were inaccessible, were given in evidence without objection. It is true the defendant was not represented and had no opportunity of urging such objections, but it was its own fault that it was not; its counsel should have been present and urged these objections, if in fact there was any foundation for them. But waiving this, there was no such error in this respect as hurt the defendant, or as would necessarily have brought about a different result from that reached. Whether leading questions are to be allowed is largely in the discretion of the court; the right to do so may be granted to the party calling the witness and refused to the opposite party, "when, from the conduct of the witness or other

* 73 *Ga.,* 787.

reason, justice requires it.' Code, §3865. And this discretion will not be controlled except in extreme cases, although the witness called may be the opposite party to the case. *Cade vs. Hatcher*, 72 *Ga.*, 359.

The oral testimony of the contents of written papers, to which exceptions is taken, relates to two subjects—the acknowledgment of the receipt of the proofs of the death of the insured and the satisfaction of the company with the sufficiency of the same, as expressed in a letter from its secretary and treasurer to the plaintiff; and her written demand upon the defendant for payment of the amount admitted to be due on the policy. The letter relating to the first appears at full length in the record, and it is therein stated that the demand which was exhibited in court was also admitted in evidence. That it is not set out in full, so that this court can judge of its extent, is not the fault of the plaintiff, but of her opponent who made the motion for a new trial, and whose duty it was to accompany it with a brief of the oral and copy of the documentary evidence had on the trial. In the absence of anything to the contrary, the court must presume that it was a legal and proper demand for the amount really due on the policy. It is incumbent upon the party alleging error to show it.

As to the objection that the admissions of the secretary and treasurer of this company, in the transaction of this business, did not bind it, we can only say that, from other proof in this case, he was its agent fully authorized to act in its behalf; what he did was within the scope of his authority, and the company is not only bound thereby, but by all the representations made by him in that business. Code, §§2494, 2499. Indeed, this company could only act by its agent; he is, in this respect, if not the company itself, at least, its *alter ego*.

3. The remaining grounds of the motion for a new trial are that the verdict is contrary to law and the evidence, and that the court erred in certain charges given to the jury. Under these grounds, it is insisted that the plaintiff was

not entitled to recover, because, first, the insured had, dur-ing the existence of the contract, gone into the " torrid zone," in violation of one of its express stipulations , and, secondly, because he had in his application for insurance misrepresented his age, by making himself out a year younger than the death proofs showed that he was; and, thirdly, because there was no evidence to support the find-ing of $100 counsel fees as damages, there being no "bad faith" shown by the company in withholding payment of the amount admitted to be due on the policy.

We do not think either one of these points was tenable. As to the first, it was shown that the policy was issued on the 16th day of April, 1872. One of its conditions was that, if it was " terminated by the non-payment of pre-miums, and for no other cause, after two full years' premi-ums had been paid, then it should be valid for as many tenth parts of the sum insured as there should have been annual premiums paid." For two years the insured paid these premiums, and at the end of that time, he made de-fault, and on the 27th day of —— (presumably April, as the premiums fell due on the 16th day of that month), 1874, the company by its secretary endorsed thereon:

"This policy is valid for two-tenths of the amount insured, sub-ject to the terms and conditions of the policy.

"(Signed)                  Geo. S. Obear.
"$1,000.                        Secretary."

It appeared that this certificate was given prior to the insured going into the " torrid zone " without the permis-sion of the company; this occurred in 1877, as was shown by the proofs of death, which, according to the pleadings and proofs in the case, had been submitted to the company. While we are strongly inclined to the opinion that this defence was unavailable, and that the policy, as to the con-dition in question, had been fully executed, and that the company had no further control over the actions of the insured in this respect, or in others of similar purport, we will not finally determine it, as the exigencies of the case

do not demand its decision. It is enough to say that, after it had full knowledge of the fact, the company deliberately expressed its satisfaction and promised to pay the amount due on the policy. It had the same knowledge. as to the discrepancy in the age of the insured, as it appeared from the application for the policy and the proofs of the death, and in this case, as in the other, it expressed satisfaction with the proofs and promised payment. This conduct on its part was a waiver of the forfeiture claimed to result from a failure to comply with both conditions. 81 N. Y. R., 410; 75 Ill., 426; 39 Mich., 51; 53 Wis., 585. It is due to the plaintiff to state that she fully explained the discrepancy as to age in her evidence; she made out the proofs of death; and as to the age, it is more likely she was mistaken than that the insured himself was; at all events, it would be going very far to conclude from this alone that the "declaration of this statement" made in the application for the policy was "fraudulent or untrue" to such an extent as would authorize the court to vacate it entirely. An error in stating the age in the proof of death is explainable. 42 N. Y. Super. Ct., 259.

4. The only remaining question under this head is as to the award of counsel fees by way of damages. This was proper, unless it was made to appear to the satisfaction of the jury that the refusal of the company to pay the loss was not in "bad faith." Code, §2850. What is "bad faith," as used in this statute? Is it the exact equivalent of "actual fraud," as was contended by the learned and able counsel for the defendant, or is it descriptive merely of some device or excuse resorted to by insurance companies to hinder and delay the assured in the collection of his loss? Both the object of the law and the terms in which it is expressed would seem to concur in attaching to the term the latter signification. It provides that in all cases when a loss occurs, and the companies refuse to pay the same within sixty days after a demand shall have been

made by the holder of the policy on which the loss occurred, they shall be liable to pay him, in addition to such loss, not more than twenty-five per cent on their liability for such loss, and also all reasonable attorney's fees for the prosecution of the suit for the recovery of the same, unless it shall be made to appear to the jury trying the same that such refusal to pay was not in bad faith. The purpose of the law was evidently to force prompt payment of such losses, after the lapse of a reasonable time, to enable the company to ascertain any good ground existing for not meeting the demand, and if no such cause existed for refusing a compliance with the demand, and they still persisted in refusing to respond, then they did so, subject to the further claim for the damages named. That such has been the meaning of the term "bad faith," as here used, in the apprehension of this court, we think is apparent from two cases, the one in 55 *Ga.*, 110, 111, and the other in 63 *Ib.*, 205. In the first case, the company promptly refused to pay the demand for two reasons: first, because the assured had not paid the premiums as provided by the policy; and, secondly, because he had died by his own hands, in violation of its express conditions. The jury found a verdict for the plaintiff, with damages and counsel fees, which was set aside and a new trial ordered; this court refused to disturb the judgment awarding the new trial, holding that there was no evidence to show that the suit was not defended by the company in good faith. In the other case, it is said, "where the highest courts of the country have differed in respect to the construction of a contract, and in this state, the principle, though hinted at, had never been settled, it cannot be that to test the question here is in bad faith." The meaning of the term in question is, as we think, negatively and impliedly, though not positively and affirmatively, fixed by these decisions as being any frivolous or unfounded refusal in law or in fact to comply with the requisition of the policy-holder to pay

according to the terms of his contract and the conditions imposed by statute.

Tested by this rule, there was sufficient evidence to justify the finding of counsel fees in this case; the company, by its accredited agent, had expressed satisfaction with the proofs of death furnished; these afforded evidence that the insured had gone into the "torrid zone" without its consent, and also showed the alleged discrepancy as to age in the application and in the proofs of death. With a full knowledge of these facts, it had promised payment of the loss when an administration should be obtained upon the estate of the insured; indeed, it urged this to be done, and when it was effected, it still withheld payment, alleging that it had been notified by one who claimed to be a creditor of the insured not to pay over the amount to the administratrix; it abundantly appeared that this was a mere pretext for refusing payment; it did not rely on this to resist the demand, but when suit was instituted set up as an answer to the suit the very defences of which it had been apprised and which it had deliberately abandoned. The plaintiff had incurred expenses about the bringing of this suit and by taking other steps necessary to enable her to receive the money, of which the company was fully apprised, and which it appears to have sanctioned, if it did not require. Surely there was enough to justify the inference that this defence was made in "bad faith," in the sense of that term as used in the statute.

The plaintiff showed cause against this motion for a new trial, as she was authorized under our practice to do (48 *Ga.*, 21), and her showing, among other things, sets forth fully the correspondence between herself and the secretary of this company, which makes an irresistible and conclusive reply to its defence. A new trial, if ordered, could not result in a more favorable verdict to the defendant; the probability is that it would be less favorable. Then why disturb this finding, in the face of the well settled

rule, that this will never be done unless there ought to be another hearing, that would probably eventuate differently from that already had. 46 *Ga.*, 432; 52 *Id.*, 145; *Ib.* 354; 45 *Id.*, 28.

Judgment affirmed.