27250.   FOKES, next friend, *v.* INTERSTATE LIFE AND ACCIDENT INSURANCE COMPANY.

DECIDED MARCH 17, 1939.

*G. C. Robinson,* for plaintiff.  *Turpin & Lane,* for defendant.

MacINTYRE, J.   On July 27, 1934, Interstate Life and Accident Insurance Company issued to George McLendon a policy of insurance which contained the following pertinent provisions:  "This policy provides indemnity for loss of life, limb, sight, or time due to accidental injuries and for loss of time due to illness, all to the extent herein provided.   [The company] hereby insures George Terry McLendon  .  .  against loss resulting directly and independently of any and all other causes from bodily injury effected solely through external, violent, and accidental means (suicide, whether sane or insane, excepted), hereinafter called 'such injury,' and against loss resulting directly and independently of all other causes from disease or illness which is contracted and begins during the life of this policy and after it has been maintained in force for thirty days, hereinafter called 'such illness,' as follows:   Part I. The principal sum five hundred & 00/100 ($500) dollars.   Monthly accident benefit fifty & 00/100 ($50) dollars.   Monthly illness benefit fifty & 00/100 ($50) dollars."   Following the above-quoted portions is a statement as to the amount to be paid for the loss of various members of the body.   Attached to the policy was an ap-

plication for the insurance which contained a statement as to the health conditions of the applicant, his age, living condition, and other insurance (life, accident, or health) which had been declined. The insured's daughter was named beneficiary under the policy. The insured, George McLendon, died from natural causes on November 19, 1936, while the policy was in full force and effect. R. E. Fokes, as next friend of the beneficiary, Mae Terry McLendon, brought this suit against the company on the policy. No demurrers were filed and the case was submitted to the judge of the superior court on an agreed statement of facts which were substantially as stated above. The judge returned a final judgment in favor of the company because "the policy of insurance sued upon carries no provision for liability for a death claim where the death of the insured resulted from natural causes." To this judgment the plaintiff excepted.

This policy comes clearly under the provisions defining industrial life insurance in Code, § 56-1301. An insurance company may fix the terms of its policies as it wishes, provided they are not contrary to law, and it may insure against certain risks and exclude others. "If the terms of the contract are clear and express, the courts can not extend or enlarge the contract by implication or construction so as to embrace an object or limitation distinct from that originally contemplated and not included in the express provisions." 1 Couch's Cyc. Ins. L. § 184. Courts do not contract for the parties, though they do construe contracts as written. "The contract of insurance should be construed so as to carry out the true intention of the parties" (Code, § 56-815), and "where the meaning is plain and obvious, the contract should be so construed as literally provided therein." *Daniel* v. *Jefferson Standard Life Ins. Co.,* 52 *Ga. App.* 620 (2) (184 S. E. 366) ; *New York Life Ins. Co.* v. *Thompson,* 45 *Ga. App.* 638, 640 (165 S. E. 847) ; *Ætna Life Ins. Co.* v. *Padgett,* 49 *Ga. App.* 666, 670 (176 S. E. 702). On the other hand, the following principles, applicable when construing insurance policies, are so well established as to need no citation of the innumerable authorities that support them: "Policies of insurance will be liberally construed in favor of the object to be accomplished, and the provisions therein will be construed strictly against the insurer." "If a policy of insurance is fairly susceptible of more than one construction, the interpretation most

favorable to the insured will be given effect." "Of two inconsistent clauses appearing in the body of the insurance policy, the one most favorable to the insured will be adopted." "If words or provisions of ambiguous meaning are employed in a contract of insurance, it is only fair and in accordance with law that the doubt should be resolved against the insurer, who is the author of the instrument, and in the preparation of which the insured had no voice." For a citation of some of the authorities supporting the above principles, see *Ætna Life Insurance Co.* v. *Padgett*, supra; also 1 Couch's Cyc. of Ins. Law, §§ 185, 186, 187, and 188.

This policy will be construed in its entirety. The caption provides: "This policy provides indemnity for loss of life, limb, sight, or time due to accidental injuries and for loss of time due to illness, *all to the extent herein provided*." (Italics ours.) Then the provision follows which insures "against loss resulting . . solely through external, violent and accidental means (suicide, whether sane or insane, excepted), hereinafter called 'such injury.'" The loss above referred to means loss because of death as well as injury. The loss by death would be payable to the named beneficiary. The loss by injury, death not ensuing, would be payable to the insured himself. The next clause is in the identical language of the foregoing clause: "against loss . . from disease or illness" beginning or contracted at least thirty days after the policy becomes of force. Such loss, whether resulting in death or not, was referred to in the first clause as "such injury," and such loss in the second clause was referred to as "such illness," and, under a like construction, there being no other proviso or exception, would mean death or disability resulting from such disease or illness. To interpret such clause otherwise it would become necessary to say that the loss referred to in the second clause, quoted above, referred to loss of time, only. No such restriction was placed in the clause relating to death by accident, and it clearly appears that this policy insures against accidental death. The caption does state "loss of time," but it further states "all to the extent herein provided," and refers to the entire clause preceding which covers loss of life as well as disability insurance. The caption and the second clause in the policy may be inconsistent. To make them accord we must read into the second clause, after the word "loss," the additional phrase "loss of time." Without these words being added there the

policy is at least ambiguous, and such being true, under the rules of construction as stated above, the death of the insured by natural causes, heart disease, was insured against, and the plaintiff named in the policy as a beneficiary was entitled to recover. The insurer prepared the policy; if it had meant to insure against accidental death alone it would have been easy to say so in no uncertain words. It employed the identical words insuring against accidental death, in insuring against loss by disease or illness. It named a beneficiary, who was to take only for death of the insured. It was a combined life and disability policy. We think the court erred in holding that the policy did not cover death from natural causes.

*Judgment reversed. Guerry, J., concurs. Broyles, C. J., dissents.*

BROYLES, C. J., dissenting. In my opinion the policy of insurance, properly construed, did not cover insurance for loss of life due to death caused by disease. I think the judgment should be affirmed.