32738. INDEPENDENT LIFE & ACCIDENT INSURANCE CO. *v.* HOPKINS.

DECIDED NOVEMBER 4, 1949.

350

*Langdale, Smith & Tillman, H. B. Edwards,* for plaintiff in error.

*Odum & Young,* contra.

TOWNSEND, J. (After stating the foregoing facts.) █ █ In order to entitle the plaintiff to recover, the evidence must authorize the jury to find, (1) that compliance has been had with the terms of the policy, and (2) that death resulted through external, violent and accidental means. When this is shown by prima facie evidence, the burden then shifts to the defendant to disprove the plaintiff's case or to show that death resulted from the intentional act or acts of another person or persons.

Compliance with the policy and the fact that the death resulted from violent and external means is undisputed. It is contended, however, that the death did not result from accidental means. It is well settled that if the insured was killed as the result of misconduct or provocation on his part, the death is not "accidental" within the meaning of the policy provision. See *Travelers Ins. Co. of Hartford* v. *Newsome,* 147 *Ga.* 608 (95 S. E. 4).

█ In order for the death to come within the exception of the policy to the effect that "this policy shall be void if the death results . . from the intentional act or acts of any person or persons," it must be proved to the satisfaction of the jury that the assailant not only intended to stab the deceased, which, indeed, he admitted, but that it was his intention to kill him. See

*Gaynor* v. *Travelers Ins. Co.*, 12 *Ga. App.* 601, 603 (77 S. E. 1072). In other words, the intent goes not only to the act itself but to the consequences of that act. And, while it is true that where one uses a deadly weapon in a manner calculated to produce death, and death results therefrom, it will be conclusively presumed that such was the intention of the party, based on the rule of circumstantial evidence that a person intends the natural and proximate consequences of his acts, such a presumption would not arise from the use of an instrument which, although capable of being used as a deadly weapon, is not naturally and ordinarily considered to be so. The evidence discloses that a hack cutter is a type of three cornered file used in sharpening turpentining tools, and that it is small enough to be placed in a man's pocket. There is nothing to indicate that it is such a weapon as would normally be expected to cause death even when used in the manner in which the jury was authorized to find it was used in this case. See *Travelers Insurance Co.* v. *Wyness*, 107 *Ga.* 584 (34 S. E. 113). It follows, therefore, that this presumption as to the intention with which the instrument was used, death in fact having resulted, did not, as a matter of law, compel the jury to find that such intent existed. On the other hand, the direct evidence of the witness Brown that it was not his intention to kill the insured, that he didn't intend to hurt him and, after the act, didn't think he had hurt him, authorized the jury to find he did not intend the consequences of his act.

The evidence being in conflict, the jury had a right to believe that part of Brown's testimony relating to his intention not to hurt the deceased, while at the same time disbelieving that part of his testimony which tended to show that the deceased was in fact the aggressor, and had by his misconduct brought about and participated in a quarrel resulting in his death. See *Sappington* v. *Bell*, 115 *Ga.* 856 (1) (42 S. E. 233). The jury was authorized to find, therefore, (1) that Hopkins' death was an accident within the meaning of the policy provision, in that it was not foreseen or participated in by him, and that it therefore resulted from violent, external and accidental means, and (2) that there was no intent to kill upon the part of Brown, or that his intended act was not such as might reasonably be expected to result in the death of the insured.

The general grounds of the motion for a new trial are therefore without merit.

■ Ground 3 of the amended motion for a new trial contends that the following charge of the trial court was error: "Where one person injures another, and the injury is not the result of misconduct or participation of the injured party, but is unforeseen by him, it is to him accidental although it may be intentionally inflicted by the other party. In an action upon a policy of accident insurance, the burden is upon the insurer to prove that the injury is within an exception provided for in a stipulation that no recovery shall be had for an injury intentionally inflicted upon the insured by any other person. Where a person receives an injury, the presumption is that it was accidental rather than the result of design. Where one person injures another and the injury is not the result of misconduct or participation of the injured party but is unforeseen by him it is to him accidental although it may be inflicted intentionally by the other party."

This charge is correct as a principle of law. See *Gaynor* v. *Travelers Ins. Co.*, 12 *Ga. App.* 601 (4), supra. It is contended, however, that the effect of the charge was to lead the jury to believe that, unless the insured was guilty of misconduct, the act was still accidental so far as payment under the policy was concerned. It must be borne in mind that this insurance policy is conditioned upon the insured meeting his death as the result of violent, external and accidental means. It was therefore necessary for the court to charge the jury fully on the subject of accidental as well as to charge non-recovery in the event his death was found to have resulted from the intentional act or acts of another person. In the first part of his charge, the judge set forth the contention of the defendant that recovery is barred under the exclusionary provision relating to the intentional acts of other persons. He then charged, "Now if you believe that to be the truth in this case, it would be your duty not to go any further and render a verdict for the defendant." Also, after the excerpt complained of, the trial court again charged, "The defendant, among other things, claims that it was an intentional injury and claims that there was an exception in their policy with the deceased, that as a result of intentional injury she

could not recover; and I so charge you that that would be the law, and if you find that to be true, you should find for the defendant." The principle of law that, if the act was intentional there could be no recovery, was obviously fully and fairly charged. But this was not the only theory under which the defendant could have prevailed. As was stated in *Travelers Insurance Co.* v. *Wyness,* supra, "The issues in the case were reduced to two questions: first, whether the death of the insured was, within the meaning of the policy, the result of an accident; second, if it was, whether Kearney intended to kill him when he fired the fatal shot." Obviously, then, it was also necessary to charge upon the theory of accident, and this was fairly done here. The excerpt complained of could not reasonably have misled the jury into believing that they should disregard other portions of the charge both preceding and following it, to the effect that if the injury was intentional the defendant could not recover.

Ground 3 of the amended motion for a new trial is accordingly without merit.

■ Grounds 1 and 2 of the amended motion for a new trial complain that the verdict for attorney's fees in the sum of $400 is contrary to law, and that the charge of the court authorizing the jury so to find was likewise erroneous since, as a matter of law, the defendant had not been guilty of that bad faith in refusing to pay the claim· in consequence of which attorney's fees might be assessed against the defendant, under Code § 56-706. The validity of the verdict and judgment as to attorney's fees depends upon whether the jury was authorized to find that the refusal of the company to pay the loss was in bad faith. In *Georgia Life Ins. Co.* v. *McCranie,* 12 *Ga. App.* 855 (78 S. E. 1115), cited by counsel for the defendant, it is stated at page 860: "'It must be borne in mind that the statutory punishment [of paying attorney's fees] is not inflicted merely for the reason that it turns out at the trial, there was, in reality, no reason for the delay. The question is, how did matters appear before the trial, as judged by a prudent and reasonable man seeking to find out the facts about an occurrence which it was his duty to investigate?' "

Matters here appeared before the trial in sequence somewhat as follows: the petition alleges that the insured met his death on July 26, 1947; that proof of loss and demand for payment was made on September 3, 1947; that payment was not made within 60 days thereafter; and that the insured met his death from a sharp instrument in the hands of a person named J. B. Brown. The answer was necessarily filed after the petition, although the date thereof is not disclosed. The petition was necessarily filed more than 60 days after September 3, 1947; otherwise, the allegations of nonpayment after the lapse of 60 days from the proof of loss and demand could not have been made and admitted. The answer does admit that the insured met his death on July 26, 1947; that proof of loss and demand of payment were made on September 3, 1947; and that payment was not made within 60 days from that time. The answer, however, neither admits nor denies that the insured met his death from a sharp instrument in the hands of J. B. Brown. It admits that the insured died as a result of a wound inflicted by means of a sharp instrument in the hands of another person, but says that such person is to the defendant unknown. It follows, therefore, that matters, before trial of this case and after the expiration of the 60-day period contemplated by Code § 56-706 for the investigation of claims by insurance companies, appeared to show no investigation on the part of the defendant as to this claim. If its answer is to be taken as true, it did not even know at that time, and at the time of filing its answer, who inflicted the injury upon the insured and brought about his death. Investigation of the case certainly should have included an interview with the person who inflicted the injury. Also, such investigation should have included interviews with other witnesses to the tragedy. This would certainly have disclosed the name of the person who inflicted the wounds, since the record indicates he was well known to those present. From these allegations and admissions in the pleadings, which it was the duty of the jury to accept as true, the jury was authorized. to find that at the time of the refusal to pay the claim after the expiration of the 60-day period, as well as at the time the suit was filed, and the answer filed thereto, no investigation had been made by the defendant to determine whether payment should have been made. The jury was there-

fore authorized to find the defendant lacking in the exercise of good faith.

In *Gulf Life Ins. Co.* v. *Matthews*, 66 *Ga. App.* 162 (17 S. E. 2d, 247) at page 166, it was held: "So far as the record shows, the company did nothing to clear up the mystery but sat back and waited for the plaintiff to convince it by evidence that the shooting was not intentional. Finally, 'along in 1939, the early part of 1939' as testified by the plaintiff, he again took the matter up with the company but was unable to obtain settlement. Then, on August 14, 1939, the present suit was brought. In the circumstances above related we think that the jury was authorized to find that the company had acted in bad faith. It could not necessarily be absolved from the charge of bad faith by looking to the plaintiff to carry the burden, placed by law upon it, of showing that the death of the insured was not caused by intentional shooting on the part of another. This is not a case where an insurance company might be said to be acting in good faith because it had the right, as contended by the plaintiff in error, to have a jury determine from facts adduced by the *plaintiff,* whether or not the shooting was intentional. It is a case where the burden rested upon the insurer of proving the exception relied upon under the double indemnity clause of the policy. In support of its contention of good faith it might have shown wherein it exercised itself to determine whether or not the shooting was intentional, but the record is silent as to anything it did to establish the truth as to the manner in which the insured met his death. It was seemingly content to wait until the plaintiff convinced it by evidence that the shooting was not intentional, but his inability to do so did not bar him from recovery for all time. When, in the early part of 1939, he called on the company for settlement, we think that a reasonable time had elapsed for the determination of the question, and the refusal of the company to pay at that time might well be found by the jury to have been in bad faith. Accordingly, we hold that the jury's verdict of $200 attorney's fees, supported by testimony from a disinterested attorney as to the reasonable fee for handling the case, was fully authorized."

Grounds 1 and 2 of the amended motion for a new trial are without merit.

The judgment of the trial court overruling the motion for a new trial as amended is without error.

*Judgment affirmed. MacIntyre, P. J., and Gardner, J., concur.*