38244.   INDEPENDENT LIFE & ACCIDENT
INSURANCE COMPANY v. THORNTON.

DECIDED JULY 15, 1960—REHEARING DENIED JULY 27, 1960.

*William M. Pate, Mitchell, Clarke, Pate & Anderson, Horace E. Richter, Richter & Birdsong,* for plaintiff in error.

*Wyatt & Morgan, James R. Lewis,* contra.

FRANKUM, Judge. ■ The policy provides: "The agreement as to benefit under this policy shall be null and void if the insured's death or injury results, directly or indirectly, from any of the following causes: (a) from the insured's . . . committing or attempting to commit, while sane or insane, assault . . . or . . . (f) from intentional homicide or as a result from the intentional act or acts of any person or persons. If it

can be proven to the satisfaction of the company that the insured was not the aggressor, exception (f) will be waived." The defendant, through its counsel, argues that there is no evidence to support the verdict, and the verdict is against the weight of the evidence. The foundation of this contention is that the evidence demanded a finding that the insured was either committing or attempting to commit an assault or was killed by an intentional act of a person or persons.

As to the first contention, the only evidence to show an actual assault by the insured on Ernest Copeland was the testimony of Ernest Copeland's nine-year-old son, Calvin. The substance of Calvin's testimony was that just at nightfall he accompanied his father as they walked along a road toward Manchester. As they approached Luther Jenkins' house, the insured fired two shots from a pistol at Calvin's father. Ernest Copeland pulled a gun and fired one shot at the insured. Thereafter, Luther Jenkins ran across to the opposite side of his house near the chimney, where he fell.

There was evidence of circumstances which would be sufficient to authorize a jury to discredit Calvin Copeland's testimony. Two spent shells were found in Ernest Copeland's gun. A witness testified that from the nature of the wound the deceased, after being shot, could probably move only three or four steps before falling. Also the fact that no weapon was found near the deceased, and the additional testimony of the insured's neighbors that Luther Jenkins was never known to have a gun, could be considered by the jury in weighing the testimony of this witness. Though the court determines whether a child is competent to testify, the credibility of the witness is for the jury. *Frasier v. State,* 143 Ga. 322 (85 S. E. 124) ; *Schamroth v. State,* 84 Ga. App. 580 (66 S. E. 2d 413). Also, the jury was authorized to consider the witness's relationship with one of the persons involved in a shooting which resulted in the death of Luther Jenkins. *Code* § 38-1712. Considering the nature of the facts testified by this witness, his relationship, and contradictions of his testimony with that of other witnesses, notwithstanding he was the only eyewitness introduced, it could not be correctly said that a jury was bound to accept his testimony as true.

*Stow v. Hargrove,* 203 Ga. 735 (8) (48 S. E. 2d 454); *Lewis v. Patterson,* 191 Ga. 348 (4) (12 S. E. 2d 593). Such facts distinguish the instant case from *Frazier v. Georgia R. & Bkg. Co.,* 108 Ga. 807 (33 S. E. 996); *Neill v. Hill,* 32 Ga. App. 381 (123 S. E. 30).

Turning to the second contention concerning what is included in the risks of an insurance policy, as cited by Judge Bleckley in *Gresham v. Equitable Life &c. Ins. Co.,* 87 Ga. 497, 505 (13 S. E. 752, 13 L. R. A. 838, 27 Am. St. Rep. 263), " 'Unless it is otherwise stipulated, the insurer takes the subject insured with his flesh and blood and passions; the dangers to which the lives of men are exposed from sudden ebullitions of feeling are a lawful matter of insurance.' " However, mutual combat and assault may be excluded from the risk included in an accident insurance policy. *Gresham* case, supra. Proof that the insured's death was within one of the exceptions of the policy is a burden on the defendant insurance company. *Independent Life &c. Ins. Co. v. Hopkins,* 80 Ga. App. 348 (56 S. E. 2d 177). "Where one person injures another and the injury is not the result of misconduct or participation of the injured party, but is unforeseen by him, it is, as to him, accidental, although it may be intentionally inflicted by the other party." *Gaynor v. Travelers Ins. Co.,* 12 Ga. App. 601 (77 S. E. 1072); *Newsome v. Travelers Ins. Co.,* 143 Ga. 785 (85 S. E. 1035). The provision of the exception that "If it can be proven to the satisfaction of the company that the insured was not the aggressor, exception (f) will be waived," means that, once the insurance company has shown by proper proof that the insured's death resulted from a wilful assault, the burden of proof is on the plaintiff to show to the reasonable satisfaction of the jury that the insured was not the aggressor. See Green, The Georgia Law of Evidence, 1957, §§ 17-22. The insurance company could not capriciously refuse to accept proof that the defendant was not the aggressor. In the instant case with the negative evidence that the insured was not known to have a gun, nor was one found near the body, this court cannot say that the jury was not authorized to find that the deceased was not the aggressor.

In *Bibb Cigar & Candy Co. v. McSwain*, 95 Ga. App. 659, 661 (98 S. E. 2d 128), the court held: "In a case like the one here under consideration, where the evidence is in sharp conflict and much of it was subject to being impeached if the jury so believed, the evidence must be construed in that light which will uphold the verdict of the jury, for, ' "In passing on the general grounds of a motion for new trial, this court passes not on the weight but on the sufficiency of the evidence. It is our duty to determine whether the verdict as rendered can be sustained under any reasonable view taken of the proofs submitted to the jury." *Ingram v. State*, 204 Ga. 164, 184 (48 S. E. 2d 891).' *Farlow v. Brown*, 208 Ga. 646, 648 (68 S. E. 2d 903)." The rule is not whether one party's theory of the case is the most probable theory, but whether the theory accepted by the jury is supported by any evidence. There is evidence to support the verdict, and it is this court's duty to affirm the judgment of the trial court denying the motion for new trial on the general grounds.

■ Special ground 4 of the amended motion for a new trial complains of the following charge: "Therefore, Gentlemen of the jury, the burden is upon the insurance company to prove to you by a preponderance of the evidence that the injury resulting in death was not accidental, but came within an exception in the policy that the death resulted from the insured's engaging in a felony or the insured's committing or attempting to commit, while sane or insane, assault, or from intentional homicide, or as a result from the intentional act or acts of any person or persons."

Counsel for the insurance company concede that the last portion of the charge complained of was a correct statement of law, but insist that the first portion of the charge cast upon the defendant a heavier burden of proof than that required by law, that is, the defendant would be required to prove that the death was not accidental. However, the first portion of the charge cannot be taken without the latter part, and vice versa. It is obvious that the trial court made a slip of the tongue in stating that the defendant must prove the death was not accidental, but the latter portion of the sentence clearly indicates that the

■

court was endeavoring to instruct the jury that the defendant had the burden to prove an affirmative defense. The latter portion of the sentence in the charge referred to and defined what the trial court meant by the expression that the "burden is upon the insurance company to prove . . . that the injury resulting in death was not accidental."

The court also instructed the jury: "I charge you, Gentlemen of the jury, that the plaintiff must prove her case; that is, she must prove the contract upon which she sues; prove the death of the person who took out the policy and see that she makes proof of death according to the requirements of the policy. When that is done, then the burden is upon the defendant to show that the death or injury, the result of which caused the death, for which the suit is now pending, did not come under the rule of the policy, but fell under some of the exceptions that are excluded by the policy; in other words, causes that the policy did not or does not cover."

Considering the charge as a whole, it is clear that the trial court instructed the jury that the plaintiff had the burden of proof to establish a prima facie case of liability against the defendant, but the insurance company had the burden to show an affirmative defense that the company was not liable under one of the exceptions of the policy. *Southern Ry. Co. v. Hurst*, 144 Ga. 699 (87 S. E. 1020). See *Independent Life &c. Ins. Co. v. Hopkins*, 80 Ga. App. 348, supra.

■ There is no merit to special ground 6, and as it is dealt with in Division 1 of this opinion, no further elaboration will be made.

■ Special ground 7 assigns as error the following charge: "Therefore, in determining whether Luther Jenkins was the aggressor, you would have to determine whether, at the time immediately prior to his death, he was doing something from which he could reasonably foresee that death might occur. If he was not doing some act from which he could foresee that death might occur, then he would not be the aggressor."

" 'Policies of insurance will be liberally construed in favor of the object to be accomplished, and the provisions therein will be construed strictly against the insurer.' " *Fokes v. Interstate*

*Life &c. Ins. Co.,* 59 Ga. App. 680, 681 (2 S. E. 2d 170). An aggressor is the one who does the first act of hostility or begins an attack. No act on the part of the deceased could be termed "aggressive" so as to defeat recovery under the policy, unless, under the facts and circumstances, it can be inferred that the insured could reasonably infer that death or injury would result. The principle involved is the same as in those cases where the participation of the insured in an assault is excluded from the risks of the policy. In those cases, the courts have held that the insured must apprehend that he is putting his life or limb in danger by committing the assault. See *Life &c. Ins. Co. v. Lingerfelt,* 100 Ga. App. 477 (111 S. E. 2d 724); *Carolina Life Ins. Co. v. Young,* 99 Ga. App. 848 (110 S. E. 2d 67); *Johnson v. Southern Life Ins. Co.,* 95 Ga. App. 625 (98 S. E. 2d 382); *Riggins v. Equitable Life Assurance Society of the U. S.,* 64 Ga. App. 834 (14 S. E. 2d 182). By parallel reasoning, the deceased in the instant case must have apprehended danger to his life or limb from his acts before such acts would be considered aggressive. Unless there is such apprehension, the death would be an accident as to the insured, because it is an unexpected, violent and external cause resulting in death. *Carolina Life Ins. Co. v. Young,* 99 Ga. App. 848, supra.

■ The insurance company complains of the trial court's charge, to wit: "I charge you further, that in order for the death of an insured to come within the exception of the policy to the effect that this policy shall be null and void if the death results from the intentional act or acts of any person or persons, it must be proven to your satisfaction that the assailant, in this case, Ernest Copeland, not only intended to shoot the deceased, Luther Jenkins, but it must also be proved that he intended to kill him. In other words, the defendant must prove to you, not only that the act of shooting was intended, but also that the result was intended, that is, the death of Luther Jenkins was intended." We agree with counsel that this charge was probably taken from *Independent Life &c. Ins. Co. v. Hopkins,* 80 Ga. App. 348, supra. However, the intent of this policy was to insure the life of Luther Jenkins from accidental death. Excluded from liability for payment for accidental death

is that death caused by the intentional acts of any person or persons, unless it can be shown that the insured did not precipitate such act or acts by his own aggressive action. In other words, the intentional acts of a third party resulting in death would be an accident as to the insured if the insured was not the aggressor. See *Gaynor v. Travelers Ins. Co.*, 12 Ga. App. 601, supra. Therefore, whether or not the defendant proved that Ernest Copeland actually assaulted and killed the insured would not demand a finding for the defendant because, under this policy of insurance, it is the acts and intentions of the insured that are germane to the policy's exceptions and not those of the person killing; but such proof would be pertinent to require the plaintiff to go further in her proof to show that the insured was not the aggressor. Consequently, the insurance company need show only that an intentional homicide or an intentional act by any person or persons caused the insured's death. The above charge requires that the insurance company prove a specific intent to kill (when one is implied by law, *Gaynor v. Travelers Ins. Co.*, 12 Ga. App. 601, supra) where only proof of an intention to shoot the insured was necessary. *Matthews v. Gulf Life Ins. Co.*, 64 Ga. App. 112 (12 S. E. 2d 202). The trial court's charge would undoubtedly be correct if the weapon used to inflict the mortal wound had been one not normally considered as a deadly weapon. *Independent Life &c. Ins. Co. v. Hopkins*, 80 Ga. App. 348, supra. Therefore, this charge placed on the insurance company an additional burden of proof, which is not required by law, before the insurance company could claim under the exception that relieved it from liability. The charge is, therefore, erroneous and harmful.

■ Special grounds 8 and 9 raise the question as to whether or not the charge on the claim for attorney's fees under *Code* § 56-706 was error, and whether or not the award of attorney's fees was authorized. The rule in this State is that bad faith will be implied from any frivolous and unfounded refusal to pay the benefits of such insurance policy within sixty days after demand. *Cotton States Life Ins. Co. v. Edwards*, 74 Ga. 220. Should the insurance company show a reasonable and probable

cause for refusing to pay, the company's good faith would be a complete defense to the action. *Travelers Ins. Co. v. Sheppard,* 85 Ga. 751 (12 S. E. 18).

Applying the above rules to the instant case, the charge was erroneous relative to the question of attorney's fees for bad faith of the insurance company. Had the jury believed the defendant's version of the case, a verdict in its favor would have been authorized.

*Judgment reversed. Gardner, P. J., Townsend and Carlisle, JJ., concur.*

## On Motion for Rehearing.

Counsel for the plaintiff in the motion for rehearing strenuously insists that the instant case is controlled by *Independent Life &c. Ins. Co. v. Hopkins,* 80 Ga. App. 348, supra. Counsel states: "It should be recalled that the *Hopkins* case and the instant case are virtually identical in almost every respect. There are no material differences in the policy provisions and there are no differences in the facts material to the comparison of these two cases, other than the fact that a 'hack cutter' was used in the *Hopkins* case and a pistol was used in the instant case." We agree with counsel that this seems to be the only material difference; however, we direct attention to the language in the *Hopkins* case as follows: "There is nothing to indicate that it [hack cutter] is such a weapon as would normally be expected to cause death even when used in the manner in which the jury was authorized to find it was used in this case." It could hardly be argued that a loaded pistol fired in the direction of the insured is not such a weapon as would normally be expected to cause death when used in the manner described. As lucidly stated in *Gaynor v. Travelers Ins. Co.,* 12 Ga. App. 601, 605, supra, "It is rarely ever possible to prove an intent by direct evidence. Intent is something which exists in the human mind and can be manifested only by external acts from which an inference of intent will arise. If one discharge a pistol, under circumstances which indicate that it was not accidental, there is a conclusive inference that he intended to fire it; and if he pointed at another and fired and hit him, there is a conclusive inference that he intended to hit him, in absence

of something to rebut such an inference. Now if death does not result, there is ordinarily no such inference that death was intended; but if death does result, an inference of an intent to kill arises, and becomes conclusive, unless it is met and overcome by other circumstances showing the absence of such intent. Where a particular injury is inflicted, there is a conclusive inference that such injury was the probable consequence of the act which inflicted it, and there is, also, a conclusive inference that the person inflicting the injury intended the natural consequence of the act."

*Accordingly, the motion for rehearing is denied.*