## 54923. STANDARD GUARANTY INSURANCE COMPANY v. DAVIS et al.

BIRDSONG, Judge.

This appeal arises out of the grant of summary judgment that has great similarity to a declaratory judgment. The facts giving rise to this case are relatively simple, but the legal principles evolving therefrom are novel and involve a matter of first impression concerning no-fault insurance. The facts show that one Vestal was the owner of a Porsche automobile. He delivered the car for repairs to a service station owned and operated by Greer. Following repairs, Davis, an employee of Greer, took the automobile out on the roadway to test drive the vehicle. While driving Vestal's Porsche, Davis collided with a car operated by Loudermilk, who died as a result of the collision. Loudermilk's survivors brought suit against the manufacturer of Porsche automobiles, the importer, the regional agent, and the local sales agency for that automobile, as well as Vestal as the car owner, Greer as the business owner of the service station, and Davis as the actual operator of the Porsche at the time of the accident.

The legal question presented involves the extent of insurance coverage, or, to paraphrase, whose insurance covers what. The pleadings indicate that Vestal, Greer, and Davis all are individually covered by insurance. Loudermilk's coverage, if any, is not at issue. Rather, the issue in this appeal arises from a third-party action by Greer and Davis against Davis' insurer, Standard Guaranty Insurance Co. Davis was insured in the minimum amount required by the Safety Responsibility Act (see Ga. L. 1977, pp. 1014, 1022; Code Ann. § 68C-307(a)). He also had additional coverages on comprehensive and collision, not here involved. After Davis was sued by Loudermilk as one of the parties defendant, Standard Guaranty Ins. Co. denied coverage or the responsibility of defending suit against Davis in view of certain exclusionary language in Davis' insurance policy, and, as a result, Davis and Greer brought suit against Standard as third-party plaintiffs to enforce the insurance coverage provided by the policy.

The trial court granted summary judgment to Davis

and Greer and denied Standard's motion for judgment on the pleadings, holding that the exclusionary language in Davis' policy was in conflict with the Ga. Motor Vehicle Accident Reparations Act, Ga. L. 1974, p. 113 et seq., commonly referred to as "no-fault" insurance. Code Ann. § 56-3401b et seq. The court reasoned that inasmuch as the exclusionary language was in conflict with the requirements of no-fault insurance, that portion of the policy was void. The court concluded that Davis was covered to the extent of the policy limitations and, that Standard was required to extend excess coverage on behalf of Davis after the primary coverage of Vestal's insurance was exhausted, assuming such to be the case. *Held:*

The Ga. Motor Vehicle Accident Reparations Act, Ga. L. 1974, pp. 113, 118; 1976, pp. 1078, 1079; 1976, p. 1513; 1976, p. 1523 (Code Ann. § 56-3405b (a) (1)) provides: "All policies of motor vehicle liability insurance issued in this State must be in accordance with the requirements of this Chapter, and no insurer shall issue a policy of motor vehicle liability insurance in this State that does not contain at least the minimum coverages required under this Chapter." Code Ann. § 56-3403b (Ga. L. 1974, pp. 113, 116; 1975, pp. 1202, 1204) provides: "No owner of a motor vehicle required to be registered in this State, or any other person . . . shall operate or authorize any other person to operate such motor vehicle unless the owner has insurance on such vehicle providing the following minimum coverage: (a) motor vehicle liability insurance equivalent to that required as evidence of security for bodily injury and property damage liability under the motor vehicle safety responsibility laws of this State." The remainder of Code Ann. § 56-3403b deals with compensation to *insured injured persons,* without regard to fault. The minimum coverages per accident for liability insurance are stated to be $10,000 per person, $20,000 for two or more persons, and $5,000 per accident for property damage. Code Ann. § 68C-307 (a), supra. On the other hand, no-fault coverage is stated to extend to a maximum of $5,000 per person per accident for personal injury only. It would appear therefore that every policy of motor vehicle insurance issued in this state after March 1, 1975,

is composed of two basic coverages. Liability coverage, as one category, connotes by its very terms, a broad duty or responsibility to a person other than the insured. No-fault insurance, as the second category, by definition is limited to personal injury protection, or "PIP." "PIP" protection is circumscribed by Code Ann. § 56-3402b (b). Close examination of the basic requirements of no-fault coverage reflects that the insurance covers only the named insured and resident members of his family for personal injury. No-fault liability to persons outside the family unit is limited to personal injury to persons in the insured car or a pedestrian struck by the insured car in this state. Code Ann. § 56-3407b (Ga. L. 1974, pp. 113, 120).

There are two other persuasive indications that motor vehicle liability insurance policies issued in this state contain two separate, basic coverages, liability and no-fault. The Motor Vehicle Accident Reparations Act became effective January 1, 1975, as to liability coverage only. Afterwards, on March 1, 1975, all liability policies were required to include an endorsement granting no-fault insurance coverage. In addition, pursuant to the authority of § 56-216(1) of the Georgia Code, the insurance commissioner of this state promulgated Ch. 120-2-28 in regulation of the Motor Vehicle Accident Reparations Act. At paragraph 120-2-28-.07(3) dealing with policy cancellation, it provides that ". . . no insurer shall cancel an insured's motor vehicle liability insurance policy *and* basic no-fault coverage endorsement in this State for failure to pay additional premiums charged to the insured because of his failure to reject in writing the mandatory optional coverages. . ."

It is necessary to draw this distinction between liability coverage and no-fault coverage in order to deal with the contentions of the parties to this appeal. In essence, the appellees Davis and Greer, as well as the trial court have taken the position that this state requires no-fault coverage in a minimum amount and where an exclusionary clause in a policy of auto insurance issued in this state excludes coverage upon an auto driven in this state that is required to be covered by law, such exclusionary clause is void as being in conflict with the

statute. The argument posits that if insurance is required and there is no valid exclusion, a fortiori coverage is present. Standard apparently does not argue that an exclusion which denies recovery to an insured or one injured by the insured car as described by the law (i.e., a passenger or lawful driver in the car or a pedestrian struck by the insured car in this state) would violate the requirements of the no-fault law. It does argue that where the injury occurs to a person not resident in the insured's household, not a pedestrian and not physically in the insured car, then the exclusion should be tested by the normal rules applicable to a liability insurance contract and should not be governed by the provisions of the no-fault statute. This latter argument has merit.

There are no decisions in this state definitively holding that no-fault coverage does or does not impinge upon the liability provisions of an automobile insurance policy. The Supreme Court of Colorado in Travelers Indemnity Co. v. Barnes, 552 P2d 300 (1976) held that the provisions of the Colorado no-fault Act were applicable to the no-fault provisions only and could not be applied to the liability provisions of the policy. Simple logic persuades us to accept the premise of the Colorado Supreme Court. Expressions of liability to another are totally inconsistent with expressions of payment for injuries without regard to fault, especially where personal injury payments are available to only a limited class of persons.

Accepting, therefore, as our premise that no-fault principles apply only to the no-fault provisions of the policy, we will examine the facts to see if the accident in question falls within the scope of a no-fault accident. It is at once apparent that it does not. The Porsche was owned by Vestal. It was being driven by Davis. Loudermilk, the deceased, was neither a pedestrian nor was he occupying Vestal's car. The appeal does not concern Vestal's insurance. Davis' no-fault coverage extends only to his car, shown to be a 1975 Chevrolet, or Davis himself plus any relative resident in his household, or a pedestrian struck by the Chevrolet. The deceased, Loudermilk, corresponds to none of these classifications. It would appear therefore that the third-party plaintiff, Davis, is in reality, relying on the liability provisions of his policy

with Standard. This being the case, we will apply the general rules of contract construction in determining the rights as between the insurer and the insured, the contracting parties.

The principle that "parties are free to make their own contracts, within the prescribed bounds of law, and the courts are not authorized, by interpretation, to rewrite or to change them, or to extend the coverage" applies to insurance contracts. *Boyes v. Continental Ins. Co.,* 139 Ga. App. 609, 611 (229 SE2d 75). Courts, including appellate courts, are duty bound to be just before they are generous, and have no more right by strained construction, to make an insurance policy more beneficial by extending coverage contracted for than they would have the right to increase the amount of coverage. *Pa. Millers Mut. Ins. Co. v. Heule,* 140 Ga. App. 851 (232 SE2d 267). The insuring agreement between Standard and Davis in describing the insured's use of an automobile other than the insured vehicle, provides in substance that the insuring agreement does not apply to an accident arising out of the operation of an automobile repair shop or service station. This exclusion is plain and unambiguous. The language does not attempt to limit coverage of liability arising out of the use of Davis' Chevrolet, the insured vehicle, nor does it attempt to limit coverage for injuries to the insured or a relative residing in his household. Nor is it urged that the basic policy provisions of Standard's policy do not meet the mandatory requirements of coverage against loss arising out of ownership, maintenance or use of the insured vehicle (the 1975 Chevrolet), or for injuries to the insured (Davis and qualified members of his household), or qualified pedestrians as set forth in the motor vehicle safety responsibility laws and the Motor Vehicle Accident Reparations Act. We are satisfied that the coverage furnished Davis by Standard as to the use of other automobiles was in addition to the mandatory requirements and was therefore voluntary. Inasmuch as this coverage was additional, or voluntary, the exclusion relating to the use of another automobile by the insured Davis was not subject to the requirements of the Motor Vehicle Reparations Act insofar as that Act requires no-fault coverage. See Nationwide Mut. Ins. Co. v. Aetna

Life &c. Co., 283 N. C. 87 (194 SE2d 834).

We recognize that, even as to liability coverage, if that coverage was extended in one portion of the contract but removed by limiting language in another portion by inconsistent language, the limiting exclusion would be in violation of the underlying purpose of the motor vehicle safety responsibility laws of this state requiring omnibus security for personal injury and property damage to citizens of this state. But, as stated above, there is no real dispute between the parties that basic liability coverage is provided for in the insured car owned by Davis and for personal injury to Davis and qualified residents of his household. As for the use of Vestal's auto by Davis, under the terms of Davis' insurance, this was voluntary coverage and when used in the course of service station business, was excluded from coverage.

Lastly, it appears that both the trial court and appellants place significance upon the language of Code Ann. § 56-3402b (h), which provides in pertinent part that "Operation, maintenance or use of a motor vehicle does not include (i) conduct within the course of a business of repairing, servicing or otherwise maintaining motor vehicles unless the conduct occurs off the business premises. . ." Because the accident did occur off the premises of Greer's service station, it is contended that the exclusion in the policy violates the no-fault law. That conclusion does not follow from the facts of this case when applied to the controlling law. The fact that an accident occurred off of business premises does not create coverage where none exists. As pointed out earlier, Davis' coverage did not extend to Vestal's car and for all that appears in this record, Davis has not sought recovery for his personal injuries, if any, under his no-fault coverage.

An insurance company may fix the terms of its policies as it wishes, provided they are not contrary to law, and it may insure against certain risks and exclude others. *Fitzgerald v. Univ. Underwriters Ins. Co.,* 132 Ga. App. 610 (208 SE2d 619); *Fokes v. Interstate Life &c. Ins. Co.,* 59 Ga. App. 680, 681 (2 SE2d 170). We have concluded that under the no-fault protection afforded by Standard to Davis, the deceased Loudermilk is not a proper claimant. Under the voluntary additional car coverage in

Standard's policy to Davis, the particular activity in which Davis was engaged is excluded from coverage. We can find no law which renders that exclusion unlawful nor is the exclusion against public policy. It follows that the trial court erred in rendering summary judgment in favor of Davis and in refusing to grant Standard's motion for judgment on the pleadings.

*Judgment reversed. Webb, J., concurs. Deen, P. J., concurs specially.*

ARGUED NOVEMBER 3, 1977 — DECIDED FEBRUARY 8, 1978 —
REHEARING DENIED MARCH 7, 1978.

*Downey, Cleveland & Moore, Joseph C. Parker,* for appellant.

*Swift, Currie, McGhee & Hiers, Irwin W. Stolz, Jr., Arthur H. Glaser, W. Wray Eckl, Dunaway, Haas & Broome, John A. Dunaway, Donald M. Fain, Ross & Finch, Baxter H. Finch, Hansell, Post, Brandon & Dorsey, Hugh E. Wright,* for appellees.

ON MOTION FOR REHEARING.

Appellees Davis and Greer on motion for rehearing have placed emphasis on certain language in the contract of insurance between Davis and his insurer, Standard Guaranty. It is their contention that as to automobiles other than the insured automobile, the policy of insurance provides general liability coverage for such second automobile provided that it is a private passenger automobile operated by the insured and notwithstanding that it was used in a business or the occupation of the insured.

We are satisfied, however, that the intended purpose of the exception was not to limit the exclusion as to coverage of a "company car" used in the personal business of the insured Davis. The exception to this general exclusion provides that if the insured was operating a nonbusiness, private passenger vehicle in furtherance of *his* (the insured's) business or to the enhancement of his occupation, then the coverage would extend liability to an accident arising out of the use of that car. In this case, the

appellee Davis was operating a private passenger vehicle but while in the employment of Greer performing service station duties in Greer's business.

Such construction renders this provision of the contract consistent with the exclusion immediately preceding it in the contract. That language excludes coverage for any accident arising out of the operation of a service station. Thus as we view the contract of insurance, a private passenger vehicle causing injury or damage during the operation of a service station business is not covered unless it is the insured's car and the injury occurs away from the premises of the service station. If however, the insured owns his own business and is operating another's private passenger vehicle in furtherance of the insured's business, the general liability coverage of the policy extends to an injury inflicted under such circumstances. Inasmuch as Davis was not operating the insured vehicle (his Chevrolet), was not operating Greer's vehicle, and was acting only as an employee carrying out his employer's duties, we hold that the private vehicle exception in Davis' policy the general business exclusion as advocated by Davis and Greer does not apply. We adhere to our judgment of reversal.

*Motion for rehearing denied.*

DEEN, Presiding Judge, concurring specially on rehearing.

I agree with the opinion as written in the elimination of coverage under the so-called no fault provisions of this insurance contract. As to the general liability features, where the insured Davis is driving a nonowned automobile, the following policy provisions apply:

"V. Use of other automobiles. If the named insured. . . owns a private passenger automobile covered by this policy, such insurance as is afforded . . . applies with respect to any other automobile subject to the following provisions:

"(d) This insuring agreement does not apply, . . . (2) to any accident arising out of the operation of an automobile . . . repair shop; (3). . . to any automobile while used in a business or occupation of such named insured. . . except a private passenger automobile operated. . . by such named

insured."

I do not agree with most of what has been added on the motion to rehear, but do agree with the result reached. I believe that test driving a vehicle is a part of the operation of an automobile repair shop, and that there is a general liability exclusion under exclusion V (d) (2). I do not believe that there is an exclusion under V (d) (3), because Davis, the named insured, was in the business of repairing cars, and repairing cars was his occupation. I do not think he has to own the business for either the exclusion or the exception thereto to apply.