## 64881. BLUE CROSS & BLUE SHIELD OF GEORGIA/ATLANTA, INC. v. DILLON.

DEEN, Presiding Judge.

Mrs. Dillon, a Southern Bell employee, is insured through her employer under three group insurance policies. Blue Cross covers basic medical benefits, dental benefits are provided by Metropolitan Life Insurance Company and extraordinary medical benefits are carried by Aetna Life Insurance Company. Mrs. Dillon was admitted to Clayton General Hospital in February, 1981, and incurred $2,568.75 in medical and hospital expenses for the removal of a growth on her lower gum. The procedure also involved a skin graft of tissue from her thigh to cover a nerve exposed by the removal of the growth. Blue Cross refused to pay her claim contending that her coverage under the basic medical benefits policy did not provide benefits for the specific admission to the hospital. In her brief, Mrs. Dillon also claims that the other carriers denied payment of benefits.

Following the denial of her claim, Mrs. Dillon brought an action to determine which carrier provided coverage for her admission. Brief discovery followed and then she filed a motion for summary judgment. Aetna and Blue Cross filed cross motions for summary judgment. The trial court granted her motion against Blue Cross and

denied the motions of Blue Cross and Aetna. Blue Cross appeals.
*Held:*

In an action to collect under the policy, Mrs. Dillon is required to show that her claim was within the type of risk insured against in order to make out a prima facie case. *Pennsylvania Millers Mut. Ins. Co. v. Heule,* 140 Ga. App. 851 (232 SE2d 267) (1976). In support of her motion, Mrs. Dillon filed two affidavits; one from the attending surgeon and one on her own behalf. Dr. Lucas' affidavit stated that he received his D.D.S. degree from Emory University and that he is licensed to practice dentistry in the State of Georgia. After graduation he worked for the U. S. Public Health Service for two years and then served a three-year residency in oral surgery at Vanderbilt University. He currently practices oral and maxillofacial surgery in Jonesboro, Georgia, and is a member of and certified by the American Board of Oral and Maxillofacial Surgery. His specialty is oral and maxillofacial surgery, which involves all aspects of the mouth, upper and lower jaws and face. He currently has staff privileges as a surgeon at four hospitals. Dr. Lucas goes on to describe the procedure he performed on Mrs. Dillon and states that the described excision of tissue and subsequent skin graft is a major surgical procedure which could not be performed outside a hospital environment and the performance of the treatment in a hospital environment was necessary to safeguard the life and health of his patient.

Mrs. Dillon's affidavit states that she is a Southern Bell employee and that as an employee she was provided certain health care benefits, that summaries of the plans were incorporated in booklets given to employees (copies attached), that she received surgical treatment for her problem (inability to properly chew her food) which required hospitalization and that she went under a general anaesthetic for the surgery performed by Dr. Lucas.

In support of its cross motion, Blue Cross submitted the affidavit of the Assistant Vice President of Claims Administration which states that Mrs. Dillon's claim was rejected because the benefits sought were "for oral surgery which were not required as a direct result of an accidental injury or in connection with the removal of impacted teeth. At no time did a physician other than a dentist certify to Blue Cross of Georgia/Atlanta, that Elizabeth Jane Dillon's hospitalization of February, 1981, was necessary to safeguard her life or her health from the effect of dentistry because of the existence of a specific non-dental organic impairment."

The record also includes a letter from Dr. Lucas to Blue Cross written on March 25, 1981, in support of Mrs. Dillon's claim explaining that his treatment was a major surgical procedure which

could not be performed outside a hospital and that it was not general dentistry. Dr. Lucas' deposition is also a part of the record and he describes the procedure in great detail and expresses the opinion that "I would definitely characterize [her condition] as an organic medical condition, especially in the light of recent research, which shows that it may be related to hormonal or endocrine imbalances with calcium." He also states that one of the several procedures performed on Mrs. Dillon was oral surgery. In the deposition, Dr. Lucas elaborates upon the training and medical background necessary to become an oral and maxillofacial surgeon and testifies that a dental degree is not a prerequisite for such training, as medical doctors may also train for this type of surgical speciality.

It is well established that construction of contracts, even ambiguous ones, is the duty of the court, *Holcomb v. Word,* 239 Ga. 847 (238 SE2d 915) (1977), and ". . . a contract of insurance must be construed most strongly against the insurer." *Carpenter v. Life &c. Co.,* 74 Ga. App. 745, 749 (41 SE2d 271) (1947). This rule is especially true where exclusions are at issue. *Morrison Assurance Co. v. Armstrong,* 152 Ga. App. 885 (264 SE2d 320) (1980). Appellee's argument that the summary of benefits booklet and not the master policy is controlling in determining a claimant's benefits is without merit in view of this court's holding in *Morrison Assurance Co. v. Armstrong,* supra. We must therefore examine the master policy and apply the rules of construction stated above to determine Mrs. Dillon's eligibility for coverage under the Blue Cross policy.

Article V contains limitations on certain hospital care. Section C provides: "For dental care or treatment, up to 120 days of benefits per confinement are available when such care or treatment is the direct result of an accidental injury or is in connection with removal of impacted teeth. Additionally, Hospital Benefits are available when a Physician other than a dentist certifies that hospitalization is necessary to safeguard the life or health of the patient from the effect of dentistry because of the existence of a specific non-dental organic impairment and when dentistry is performed by Physician or licensed dentist . . ." Article VI provides for benefits for physician services: "When the services set forth in this Article VI are rendered to a Subscriber, in connection with the care and treatment of an illness or injury, by a Physician who customarily bills for such service, benefits will be provided as set forth herein, when medically necessary for the treatment or diagnosis of illness or injury and rendered on or after the effective date of the Subscriber's coverage hereunder. Benefits will not be provided when charged for by or payable to a Hospital or to other than a Physician . . ."

Part B entitled "Surgical care . . ." states "3. Oral Surgical

Procedures Benefits not to exceed 90% of the Physician's reasonable and customary charge will be provided for oral surgical procedures when: (a) required as a direct result of an accidental injury and hospitalization is required; (b) in connection with the removal of impacted teeth only when hospitalized as an inpatient; (c) a physician other than a dentist certifies that hospitalization is necessary to safeguard the life or health of the patient from the effect of dentistry because of the existence of a specific non-dental organic impairment."

These contract provisions must be construed in conjunction with the provisions of the Georgia Code as they are found in Chapter 56-31, Group and Blanket Accident and Sickness Insurance. Section 56-3110 provides that in medical and surgical policies, "[a]ny other laws to the contrary notwithstanding, whenever the term 'physician' or 'surgeon' is used in any policy of health or accident insurance ... said term shall include, within its meaning, medical practitioners licensed under and in accordance with Code Chapter 84-7, relating to dentists ... in respect to any care, services, procedures, or benefits covered by said policy of insurance or health care contract which the said persons are licensed to perform, any provisions in any such policy of insurance or health care contract to the contrary notwithstanding." Therefore, it appears that the attempt by Blue Cross in the policy to exclude a dentist from the meaning of "physician" is invalid as the term "physician" includes a dentist as a matter of law. Moreover, there is nothing in the record to pierce Dr. Lucas' claim that while he is licensed as a dentist, he is also licensed as a surgeon and therefore "practices medicine" as that term is defined in Code Ann. § 84-901. There is also nothing in the record to pierce Dr. Lucas' opinion that hospitalization was necessary to protect the health and life of his patient.

Construing the limitations contained in the policy in favor of the insured, we find that Mrs. Dillon has coverage under her basic medical benefits policy.

Appellee's motion for damages for a frivolous appeal is denied.

*Judgment affirmed. McMurray, P. J., Shulman, P. J., Banke and Sognier, JJ., concur. Quillian, C. J., Birdsong, Carley and Pope, JJ., dissent.*

DECIDED OCTOBER 18, 1982 —
REHEARING DENIED DECEMBER 8, 1982 —

*Patrick L. Swindall, Mitch J. Skandalakis,* for appellant.
*Fred W. Ajax, Jr., Tommy T. Holland, Michael L. Wetzel,* for appellee.

POPE, Judge, dissenting.

I agree that Code Ann. § 56-3110 (now OCGA § 33-30-7) requires the inclusion of dentists within the meaning of the terms "physicians" and "surgeons" in respect to any care, services, etc. covered by the policy which they are licensed to perform. Indeed, Subsection J of Article I of the policy specifically so provides. Subsection C of Article V provides: ". . . Hospital Benefits are available *when a Physician other than a dentist* certifies that hospitalization is necessary to safeguard the life or health of the patient from the effect of dentistry because of the existence of a specific non-dental organic impairment and when dentistry is performed by Physician or licensed dentist." (Emphasis supplied.) Contrary to the holding by the majority, this provision does not exclude a dentist from the meaning of the term "physician." Rather, the clear and unambiguous language of the provision recognizes a dentist as one included within the meaning of "physician."

The provision is equally clear and unambiguous in providing that hospitalization benefits under the policy are *only* available when a physician *other than a dentist* certifies that hospitalization is necessary to safeguard the life or health of the patient from the effect of the dentistry performed. There is nothing in Code Ann. § 56-3110 which precludes such a requirement. In fact, § 56-3110 provides that benefits under the policy may be limited "to services performed by specifically defined professions. . . ." In *Standard Guaranty Ins. Co. v. Davis,* 145 Ga. App. 147, 151 (243 SE2d 531) (1978), this court held: "Courts, including appellate courts, are duty bound to be just before they are generous, and have no more right by strained construction, to make an insurance policy more beneficial by extending coverage contracted for than they would have the right to increase the amount of coverage." Under the circumstances in this case, benefits under the subject policy were available only if hospitalization was certified as necessary by a physician other than a dentist. Since Dr. Lucas did not meet this requirement, his certification to Blue Cross was insufficient to invoke coverage under the terms of the policy. Therefore, I respectfully dissent.

I am authorized to state that Chief Judge Quillian, Judge Birdsong and Judge Carley join in this dissent.